1  Andrew S. Tulumello (SBN 196484)
   Claire L. Chapla (SBN 314255)
2  GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.
3  Washington, D.C. 20036
   Telephone:  202.955.8500
4  Facsimile:  202.530.9678
   Email:  atulumello@gibsondunn.com
5  Email:  cchapla@gibsondunn.com

6  *Attorneys for Defendant PepsiCo, Inc.*
   (additional counsel on signature page)

7

8                 UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
9                  SAN FRANCISCO DIVISION

10 EARTH ISLAND INSTITUTE,                    CASE NO. 3:20-cv-2212

11            Plaintiff,                      **NOTICE OF REMOVAL**

12       v.                                   [Removal from the Superior Court of the State of
                                              California, County of San Mateo, Case No.
13 CRYSTAL GEYSER WATER COMPANY;              20CIV01213]
   THE CLOROX COMPANY; THE COCA-
14 COLA COMPANY; PEPSICO, INC.;               Action Filed:    February 26, 2020
   NESTLÉ USA, INC.; MARS,
15 INCORPORATED; DANONE NORTH
   AMERICA; MONDELĒZ
16 INTERNATIONAL, INC.; COLGATE-
   PALMOLIVE COMPANY; THE PROCTER
17 & GAMBLE COMPANY; and DOES 1-25,
   inclusive,
18
            Defendants.
19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1  **TO THE CLERK OF THE ABOVE-TITLED COURT AND TO PLAINTIFF EARTH IS-**

2  **LAND INSTITUTE AND ITS COUNSEL OF RECORD:**

3      PLEASE TAKE NOTICE THAT Defendants Crystal Geyser Water Company; The Clorox

4  Company; The Coca-Cola Company; PepsiCo, Inc.; Nestlé USA, Inc.; Mars, Incorporated; Danone

5  US, LLC (erroneously sued as Danone North America); Mondelēz Global LLC (erroneously sued as

6  Mondelēz International, Inc.); Colgate-Palmolive Company; and The Procter & Gamble Company

7  (collectively, "Defendants") remove this action—with reservation of all defenses and rights—from

8  the Superior Court of the State of California for the County of San Mateo, Case No. 20CIV01213, to

9  the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331,

10  1333, 1441, 1442, 1446, and 1367(a).  All Defendants join in this Notice of Removal.  Therefore,

11  without conceding that any Defendant has been properly joined and served in this action, any and all

12  Deffendants that have been properly joined and served have consented to removal of this action.

13      Plaintiff Earth Island Institute seeks to use the California state courts to hold a hand-picked

14  group of consumer products companies financially responsible for plastic waste issues around the

15  globe.  Plaintiff purports to use California law as a means to rewrite federal and state recycling legis-

16  lation, and reshape the policies and prerogatives of executive agencies on both a national and interna-

17  tional scale.  But the condition of the world's oceans and waterways is not a "local" matter that can

18  be shoehorned into a public nuisance suit and addressed by the laws of a single state.  Plaintiff is

19  complaining about a global social challenge that no single country, state, or company can be blamed

20  for, let alone redress.  The Complaint reflects a multitude of independent issues and decisions span-

21  ning the globe that contribute to the alleged "nuisance."  The problem it challenges involves the ac-

22  tivities of millions if not billions of individuals, businesses, and governments at every level, both past

23  and present.  Plaintiff complains about the accumulation of plastic waste on beaches in Bali, Indone-

24  sia and in the Yangtze River in China; about municipal recycling programs from Philadelphia to Min-

25  neapolis to Alabama to Oregon; about plastic export policies in China; and about alleged lobbying in

26  Vermont in the 1950s and Oregon in the 1970s.  The issues alleged in the Complaint have no unique

27  connection to California and are governed by federal law.  Plaintiff's claims directly challenge and

28

implicate interstate pollution, federal statutes and regulations, traditional maritime activity, and other uniquely federal interests. They do not belong in state court. They belong in federal court.

It is well-settled that claims involving the interstate and international proliferation of waste call for a uniform rule of decision and thus arise, if at all, under federal common law, which in and of itself justifies federal court jurisdiction. Federal subject matter jurisdiction also exists because the Complaint requires a court to interpret and apply federal standards, including legislative and regulatory determinations under the Clean Water Act and other federal statutes regulating water quality, and because many of the events giving rise to Plaintiff's alleged injuries occurred on federal enclaves. Plaintiff also alleges harm occurring on navigable waters, including the territorial seas of the United States, the Pacific Ocean, and beyond, which brings Plaintiff's claims within this Court's admiralty or maritime jurisdiction—and well outside the reach of California state law and state courts. And some Defendants have provided potable water and nonperishable food in plastic packaging pursuant to contracts with the federal government, which gives rise to federal officer jurisdiction.

The Complaint calls into question federal law, seeks to substitute Plaintiff's judgment for that of Congress and federal agencies, and attempts to hold each Defendant responsible for the challenges presented by plastic consumption. It does so without ever alleging that any Defendant has improperly discarded plastic into waterways, oceans, or landfills, let alone California waterways specifically. Nor does the Complaint allege that any Defendant has violated any plastic packaging regulation under California law or anywhere else. The Complaint at its core challenges long-established federal statutory and regulatory frameworks and threatens to undermine bedrock divisions of federal and state responsibility, while usurping federal prerogatives of national economic development, environmental protection, and international relations. That is why the Supreme Court and Ninth Circuit have long recognized that interstate and transnational claims of the sort alleged in the Complaint arise under federal law, not state law. Plaintiff's Complaint belongs in this federal forum.

## I.    TIMELINESS OF REMOVAL AND JURISDICTION

1.    Plaintiff filed its Complaint in the Superior Court for San Mateo County, California, Case No. 20CIV01213, on February 26, 2020. All Defendants were served (or purportedly served) on or after March 2, 2020. Copies of all process, pleadings, or orders served (or purportedly served)

upon Defendants are attached as Exhibits A–R to the Declaration of Claire L. Chapla, filed concurrently herewith.

2.      This notice of removal is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days of March 10, 2020, the date of service of the Complaint on Defendant Pepsi Co., Inc.  It has likewise been filed within 30 days of the date of service on any Defendant in the action.  *See* Chapla Decl., Exs. G–P.  All Defendants that have been served as of today join in this removal but otherwise maintain their separate identities and positions in the suit.

3.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because the Complaint arises under federal law and is based on alleged injuries to and/or conduct on federal enclaves.  The Court also has original admiralty or maritime jurisdiction under 28 U.S.C. § 1333 because Plaintiff alleges harm that occurred on navigable waters, including the Pacific Ocean, and relates to traditional maritime activity.  And the Court has federal officer jurisdiction under 28 U.S.C. § 1442 because Plaintiff's claims relate to work that at least some Defendants performed under the direction of federal officers.  To the extent this Court construes any of Plaintiff's claims as arising under state law, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the claims over which the Court has original jurisdiction.  Thus, removal is proper under 28 U.S.C. §§ 1441, 1442, and 1446.  In addition, the Complaint is legally without merit and, at the appropriate time, Defendants will move to dismiss Plaintiff's claims under Rule 12 of the Federal Rules of Civil Procedure.

## II.      SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

4.      Plaintiff purports to assert state-law claims for alleged injuries relating to the accumulation of plastic waste in coastal areas and waterways, including the Pacific Ocean, well beyond the reach of California laws and even the jurisdiction of the United States.  Plaintiff does not allege that any Defendant improperly disposed of plastic waste.  Instead, Plaintiff alleges that Defendants—manufacturers of food, beverage, and other consumer products sometimes packaged in plastic containers—caused Plaintiff harm by labeling and marketing their packaging as recyclable while knowing that only a fraction of the plastic produced worldwide each year is ultimately recycled and reused, *see*, *e.g.*, Compl. ¶¶ 21, 27, 153, 193, and by failing to use Plaintiff's preferred alternatives to plastic

packaging, *see, e.g., id.* ¶¶ 112–14, 172, 210.  Plaintiff does not dispute that Defendants' plastic containers are recyclable where labeled as such, but nonetheless alleges that Defendants have violated California law by describing those containers as recyclable because, in Plaintiff's view, consumers and municipalities do not recycle enough of them.  *See, e.g., id.* ¶¶ 12, 93, 111, 129, 132.

5.     Plaintiff asserts causes of action that purport to arise under state common law, including tort claims for public nuisance, negligence, negligence – failure to warn, strict liability – failure to warn, and strict liability – design defect, as well as breach of express warranty and violation of the California Consumer Legal Remedies Act.  Plaintiff purports to bring these claims on behalf of itself, four of its fiscally sponsored projects (Plastic Pollution Coalition, the International Marine Mammal Project, Shark Stewards, and 1000 Fountains), and its members.  While ignoring that there are many (indeed, hundreds of thousands) of other companies that use plastic, Plaintiff seeks an order finding these ten specific Defendants—most, if not all, of which are competitors—"jointly and severally" liable for the alleged harm to the global environment and Plaintiff's property.  Plaintiff asks the state court to require Defendants to (1) "abate[] the nuisance described herein," (2) "disburse the funds and resources necessary to remediate the harm they have caused," (3) pay compensatory damages, (4) "refrain from marketing and promotion of Products that state or imply that the Products are recyclable," and (5) issue "corrective advertising . . . to inform consumers that the Products do not have the characteristics, uses, benefits, and quality Defendants have claimed."  Compl., Prayer for Relief.

6.     In filing or consenting to this Notice of Removal, Defendants do not waive, and expressly preserve, their right to challenge personal jurisdiction, sufficiency of process, and/or sufficiency of service of process in any federal or state court.  At least eight out of ten defendants are out-of-state defendants, and several Defendants will deny that any California court has personal jurisdiction over them and will object to the sufficiency of process and service of process.  Defendants properly before the Court will deny any liability.  Defendants expressly reserve all rights in this regard.  *See, e.g., Munjy v. Destination XL Grp., Inc.*, 2015 WL 1021129, at *3 (E.D. Cal. Mar. 9, 2015) ("[A] defendant does not waive jurisdictional challenges by removing a case to federal court." (citation and internal quotation marks omitted)); *Carter v. Bldg. Material & Constr. Teamsters' Union Local 216*, 928 F. Supp. 997, 1000–01 (N.D. Cal. 1996) ("A petition for removal affects only the

forum in which the action will be heard; it does not affect personal jurisdiction."); *see also* Charles A. Wright et al., *Federal Practice and Procedure* § 3721 (4th ed. 2019) ("A defendant does not waive any defense it may have to an action . . . by removing the case from state to federal court.  A defend-ant may, for example, move to dismiss for lack of personal jurisdiction after removing a suit.").

7.      For purposes of meeting the jurisdictional requirements for removal only, however, Defendants submit that removal is proper on five independent grounds.

8.      ***First***, this action is removable under 28 U.S.C. § 1331 and 28 U.S.C. § 1441 because Plaintiff's claims have their source in federal common law.  *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985).  The Supreme Court has long held that "[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law." *Illinois v. City of Milwaukee*, 406 U.S. 91, 103 (1972) ("*Milwaukee I*").  The Court has also held that "the regulation of interstate water pollution is a matter of federal, not state, law." *Int'l Paper Co. v. Ouel-lette*, 479 U.S. 481, 488 (1987).  Here, Plaintiff seeks to regulate the amount of discarded plastic, in-cluding ambient "microplastics," that has accumulated in the world's oceans and waterways from a global multitude of sources over the decades.  The Complaint does not allege that the discarded plas-tic at issue originated exclusively in California or that only California waters are affected by plastic waste, nor could it.  *See*, *e.g.*, Compl. ¶ 200 (alleging that "the plastic packaging in the Products has numerous global and local impacts on waterways, coasts, oceans, and marine life").  Instead, the Complaint alleges that the accumulation of plastic is the result of the production, consumption, and disposal of plastic across the United States and the world.  This alleged harm can be remediated, and the alleged nuisance abated, only by a global reduction in the amount and type of plastic produced, consumed, and discarded, as well as by coordinated and comprehensive efforts by national govern-ments (and all of their constituent governing bodies) around the globe.  *See*, *e.g.*, *id.* ¶¶ 11–12 (de-scribing the inability of recycling systems to process the amount of plastic produced and consumed worldwide and alleging that "[u]nless every human on earth melted down and repurposed their weight in plastic every year, every ecosystem worldwide will continue to be disrupted by humans' plastic waste").  Nor can these harms—which have global and historic causes, and which are alleged

to encompass injuries to all of the oceans and all of marine life on the planet—be redressed by California law, which extends only so far as the state's borders.  Plaintiff's claims, therefore, arise (if at all) under federal common law, not state law, and are properly removed to and addressed by this Court.  *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 n.7 (1981) ("*Milwaukee II*") ("[I]f federal common law exists, it is because state law cannot be used."); *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (affirming that "state law is totally displaced by federal common law" when "the federal interest requires that 'the rule must be uniform throughout the country'" (citation omitted)); *California v. BP p.l.c.*, 2018 WL 1064293, at *5 (N.D. Cal. Feb. 27, 2018) ("[P]laintiffs' claims, if any, are governed by federal common law.  Federal [removal] jurisdiction is therefore proper.").

9.     ***Second***, removal is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1441 because the causes of action asserted in the Complaint will require the Court to interpret federal legislation and federal statutory, regulatory, and policy trade-offs, and to second-guess (under the doctrine of public nuisance) whether these decisions made by Congress and the federal Executive Branch are "reasonable."  Because of the significant implications for federal law and policy, Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

10.     ***Third***, removal is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1441 because Plaintiff's claims arise in part on numerous federal enclaves.  *See* U.S. Const., art. I, § 8, cl. 17; *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'").

11.     ***Fourth***, removal is proper under 28 U.S.C. § 1333 and 28 U.S.C. § 1441 because much of the harm Plaintiff alleges occurred on navigable waters outside the reach of California and relates to traditional maritime activity.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

12.     ***Fifth***, removal is proper under 28 U.S.C. § 1442(a)(1) because, assuming the truth of Plaintiff's allegations, a causal nexus exists between its claims and conduct that some Defendants have undertaken under the control and direction of federal officers; Defendants are "persons" within the meaning of the statute; and Defendants can assert several colorable federal defenses.  *See Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014).

13.     Defendants address each of these grounds in additional detail below.  Should Plaintiff challenge this Court's jurisdiction, Defendants will further elaborate on these grounds.

## III.     THIS COURT HAS FEDERAL QUESTION JURISDICTION BECAUSE PLAINTIFF'S CLAIMS ARISE, IF AT ALL, UNDER FEDERAL COMMON LAW.

14.     This action is removable because Plaintiff's claims, to the extent that such claims exist, necessarily have their source in federal common law, not California state law.  Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "'claims founded upon federal common law as well as those of a statutory origin.'"  *Nat'l Farmers Union*, 471 U.S. at 850 (quoting *Milwaukee I*, 406 U.S. at 100).

15.     Federal common law applies in subject areas in which there are "uniquely federal interests."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).  *See generally* Henry J. Friendly, *In Praise of* Erie—*and the New Federal Common Law*, 39 N.Y.U. L. Rev. 383 (1964).  Federal common law governs where, for example, "there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism."  *Milwaukee I*, 406 U.S. at 105 n.6; *see also Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*") (federal common law applies to issues "within national legislative power" and for which there is "a demonstrated need for a federal rule of decision"); *Caltex Plastics, Inc. v. Lockheed Martin Corp*., 824 F.3d 1156, 1159–60 (9th Cir. 2016) (liability of defense contractor to third party under government contract for weapons systems implicated "uniquely federal interests" in national security that would be impaired if disparate state-law rules were applied).

16.     Claims involving the pollution of oceans and waterways are one such area where, post-*Erie*, federal common law is essential to avoid a patchwork of fifty different competing and conflicting state legal standards.  The Supreme Court has repeatedly emphasized this point: "When we

Gibson, Dunn &
Crutcher LLP

deal with air and water in their ambient or interstate aspects, there is a federal common law." *Milwaukee I*, 406 U.S. at 103; *see also AEP*, 564 U.S. at 421 ("Environmental protection is undoubtedly an area within national legislative power, [and] one in which federal courts may fill in statutory interstices."); *Ouellette*, 479 U.S. at 488 ("[T]he regulation of interstate water pollution is a matter of federal, *not state*, law." (emphasis added)); *Kivalina v. Exxon Mobil Corp.*, 696 F.3d 849, 855 (9th Cir. 2012) (explaining that "[p]ost-*Erie*, federal common law includes the general subject of environmental law and specifically includes ambient or interstate air and water pollution"). "Federal common law and not the varying common law of the individual States" applies here due to the recognized need for a "uniform standard" when dealing "with the environmental rights of a State against improper impairment by sources outside its domain." *Milwaukee I*, 406 U.S. at 107 n.9 (quoting *Texas v. Pankey*, 441 F.2d 236, 241–42 (10th Cir. 1971)); *see also* 33 U.S.C. § 1253 (stating the need for "uniform State laws relating to the prevention, reduction, and elimination of pollution"); *United States v. Standard Oil Co.*, 332 U.S. 301, 307 (1947) (federal common law supplies the rule of decision where the "federal judicial power" must "remain[] unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters").

17.     There is no requirement that a "traditional pollutant" be emitted "in order for federal common law to apply." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 771 (7th Cir. 2011). Instead, courts have recognized that the federal common law generally extends to cases involving "environmental and economic destruction" of navigable waters by any means. *Id.* at 771–72 (federal common law governed nuisance claim alleging that defendant's operation of the Chicago Area Waterway System would allow non-native species of carp to enter the Great Lakes).

18.     Here, to the extent that Plaintiff's claims can be maintained at all, they necessarily derive from federal common law.  Plaintiff does not challenge uniquely localized pollution arising from a specific source point in California. *Cf. Nat'l Audubon Soc'y v. Dept. of Water*, 869 F.2d 1196, 1198 (9th Cir. 1988).  Instead, Plaintiff claims that Defendants have caused or contributed to the undifferentiated accumulation of plastic waste and proliferation of ambient microplastics in the Pacific Ocean and other waters and coastal areas from sources around the United States and around the globe.  *See*,

NOTICE OF REMOVAL
CASE NO. 3:20-CV-2212

Gibson, Dunn &
Crutcher LLP

*e.g.*, Compl. ¶ 8 (alleging that many of the Defendants are among "the 10 companies most responsible for plastic pollution" worldwide); *id.* (alleging that "[t]he top three contributors . . . are linked to 14% of global oceanic plastic pollution"); *id.* ¶¶ 11–15 (describing the level of global plastic production and the amount of plastic waste that enters the world's oceans and rivers from sources around the globe); *id.* ¶ 103 (alleging that China has "routinely" dumped plastic waste exported by the United States "in landfills or waterways," from which it enters the oceans).

19.     Moreover, Plaintiff's public nuisance and negligence claims will require judgment about the "reasonableness" of any Defendant's conduct, including the amount and type of plastic packaging used, the social benefits of plastic packaging, and the labeling and marketing of each Defendant's products as recyclable; whether any Defendant deviated from the applicable standard of care; and the causal contribution (if any) by any Defendant to the accumulation of plastic, which necessarily requires an evaluation of interstate and transnational conduct.  None of the conduct Plaintiff alleges on the part of Defendants is unique to California.

20.     Plaintiff's claims also invade the federal government's exclusive authority over foreign commerce and affairs, including on the high seas, and thus "touch[] basic interests of federalism." *Milwaukee I*, 406 U.S. at 105 n.6.  Plaintiff seeks redress for a global social challenge requiring the engagement and cooperation of the international community.   "[F]ederal common law exists" in precisely such areas that involve "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981).  "In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control." *Id.*

21.     The harms Plaintiff alleges are at the center of a global debate regarding the production, consumption, and disposal of plastic worldwide.  Recently, the international community has increased its focus on reducing the proliferation of plastic waste in the global marine environment, including by updating existing treaties and other instruments specifically to address this issue.  For ex-

Gibson, Dunn &
Crutcher LLP

ample, in 2019, in response to studies by the United Nations Environment Assembly, the Basel Convention on the Controls of Transboundary Movements of Hazardous Waste and their Disposal was amended to include both hazardous and nonhazardous plastic waste in a binding framework designed to increase transparency in global trade in plastic waste and to improve safety for human health and the environment.  *See* U.N. Environment Programme, Basel Convention, http://www.basel.int/Implementation/Plasticwaste/Overview/tabid/8347/Default.aspx (last visited Mar. 31, 2020).  At the same time, the parties to the Convention established a new Partnership on Plastic Waste to promote cooperation and dialogue between governments, civil society, academia, and the private sector to work toward reducing and eliminating the discharge of plastic waste and microplastics into the environment. *See* U.N. Environment Programme, Plastic Waste Partnership, http://www.basel.int/Implementation/Plasticwaste/PlasticWastePartnership/tabid/8096/Default.aspx (last visited Mar. 31, 2020).  In addition, the Global Partnership on Marine Litter was created in 2012 at the U.N. Conference on Sustainable Development to bring together multiple stakeholders—including governments, international organizations, businesses, academia, non-governmental organizations, and individuals—for the express purpose of preventing waste and managing and reducing the impacts of marine litter worldwide. *See* Global Partnership on Marine Litter: Purpose, Function and Organization (Oct. 2018), *available at* https://gpmarinelitter.org/sites/default/files/Framework%20Document/GPML%20Framework%20Document%20-%20English.pdf.  The United Nations Environment Program has also formed an expert working group of member states, industry representatives, and civil society experts to develop strategies for combatting global marine plastic waste and microplastics.  *See* U.N. Environment Assembly of the U.N. Environment Programme Res. 3/7 (Jan. 30, 2018), *available at* https://papersmart.unon.org/resolution/uploads/k1800210.english.pdf.  And many stakeholders have called for a new binding international agreement that deals exclusively with marine plastic waste, citing the need for a comprehensive, global solution.  *See*, *e.g.*, "Nordic Ministerial Declaration on the Call for a Global Agreement to Combat Marine Plastic Litter and Microplastics," Nordic Co-operation (Apr. 10, 2019), https://www.norden.org/en/declaration/nordic-ministerial-declaration-call-global-agreement-combat-marine-plastic-litter-and; Jed Alegado, "A Global Response to the Global

Plastic Crisis," #breakfreefromplastic (Dec. 4, 2018), https://www.breakfreefromplas-tic.org/2018/12/04/a-global-response-to-the-global-plastic-crisis/.

22.    The U.S. government is also prioritizing the negotiation of international agreements concerning the reduction of marine plastic conditions.  *See*, *e.g.*, *Bipartisan Bill to Tackle Marine Debris Crisis Signed Into Law*, Office of U.S. Senator Dan Sullivan (Oct. 11, 2018), https://www.sulli-van.senate.gov/newsroom/press-releases/bipartisan-bill-to-tackle-marine-debris-crisis-signed-into-law (stating that new legislation will facilitate U.S. negotiation of international agreements concern-ing marine plastic pollution); *Remarks by President Trump at Signing of S. 3508, the "Save Our Seas Act of 2018*," Whitehouse.gov (Oct. 11, 2018), https://www.whitehouse.gov/briefings-statements/re-marks-president-trump-signing-s-3508-save-seas-act-2018/ (noting that "the new United States-Mex-ico-Canada Agreement" is "the first U.S. trade agreement ever to include commitments by the parties to cooperate to address land- and sea-based pollution and improve waste management").

23.    Numerous statutes and federal initiatives further underscore the "uniquely federal in-terests," *Boyle*, 487 U.S. at 504, in regulating post-consumer plastics on a national and international level.  For example, Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and to facilitate inter-national cooperation "for the prevention, reduction, and elimination of pollution" in the waters of for-eign countries "and in international waters," *id.* § 1251(c).  The EPA Office of the Inspector General is currently evaluating "the extent to which the EPA's existing Clean Water Act programs and Office of Research and Development initiatives address threats and risks to public health and the environ-ment from plastic pollution within the waters of the United States."  Memorandum from the U.S. En-vtl. Protection Agency on the Effectiveness of Clean Water Act to Protect from Plastic Pollution (Oct. 30, 2019), *available at* https://www.epa.gov/sites/production/files/2019-10/docu-ments/_epaoig_notificationmemo_10-30-19_plasticpollution.pdf.

24.    Moreover, within the past two years alone, Congress has enacted and considered legis-lation designed to address precisely the types of harms Plaintiff alleges.  *See*, *e.g.*, Save Our Seas Act of 2018, Pub. L. No. 115-265, 132 Stat. 3742 (reauthorizing and expanding the National Oceanic and

Gibson, Dunn &
Crutcher LLP

Atmospheric Administration's Marine Debris Program and calling for increased international engagement, particularly with countries most responsible for marine plastic waste); *see also* Save Our Seas 2.0 Act, S. 2372, 116th Cong. (as passed by Senate, Jan. 9, 2020) (calling for enhanced global engagement to combat plastic waste in marine environments—including establishing "measurable targets" and "action plans" and negotiating new international agreements—and improved domestic infrastructure to prevent marine plastic pollution); Partnering and Leveraging Assistance to Stop Trash for Cleaner Seas Act (PLASTICS Act), H.R. 4636, 116th Cong. (2019) (calling on the Executive Branch to "advance efforts to work with national governments and local communities to develop integrated waste management systems" and "encourage[] federal departments and agencies to work with entities in the private sector and with nongovernmental organizations to leverage private and public capital to complement United States assistance programs"); Break Free From Plastic Pollution Act of 2020, H.R. 5845, 116th Cong. (2020) (proposing to shift greater responsibility to producers of plastic products for collecting and recycling these materials).

25.     Because federal common law governs Plaintiff's claims, state law necessarily cannot do so. *See Milwaukee II*, 451 U.S. at 313 n.7 ("[I]f federal common law exists, it is because state law cannot be used."); *New SD, Inc.*, 79 F.3d at 955 (affirming removal because "state law is totally displaced by federal common law" when "the federal interest requires that 'the rule must be uniform throughout the country'" (citation omitted)); *Nat'l Audubon Soc'y*, 869 F.2d at 1204 ("[I]t is inconsistent to argue 'that both federal and state nuisance law apply to this case. . . .  [I]f federal common law exists, *it is because state law cannot be used*.'" (emphasis added)).

26.     Federal jurisdiction exists because "the scope, nature, legal incidents and consequences" of Plaintiff's claims "are fundamentally derived from *federal sources*."  *Standard Oil*, 332 U.S. at 305–06 (emphasis added).  And a court must look to the *source*, rather than the *substance*, of a claim to determine whether it "arises under" federal law.  *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 42 (1st Cir. 1999).  Defendants will ultimately show that Plaintiff's claims are meritless as a matter of law.  But because Plaintiff's claims "deal with air and water in their ambient or interstate aspects," *Milwaukee I*, 406 U.S. at 103, they have their source in and must be governed by "fed-

eral, not state, law," *Ouellette*, 479 U.S. at 488.  As the Supreme Court has held, cross-boundary pollution claims necessarily "arise under" federal law even where federal law ultimately does not provide a remedy because "the basic scheme of the Constitution" precludes application of state law. *AEP*, 564 U.S. at 420–21.  In these circumstances, "[b]orrowing the law of a particular State would be inappropriate." *Id.* at 422.

27.     In sum, because Plaintiff's claims arise under federal common law, this Court has federal question jurisdiction and removal is proper.

## IV.     THIS ACTION IS REMOVABLE BECAUSE IT RAISES DISPUTED AND SUBSTANTIAL FEDERAL ISSUES.

28.     Even if Plaintiff's claims were properly pleaded under state law (they are not), they still support federal question jurisdiction because the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

29.     For decades, national and international efforts have been directed at regulating the production, use, and disposal of plastic products, as well as the promotion of recycling and the prevention and remediation of water pollution.  By challenging the reasonableness of each Defendant's conduct, Plaintiff's claims necessarily require a court to evaluate each Defendant's compliance with statutes, treaties, and regulations adopted as a result of these efforts, as well as the adequacy of those statutes, treaties, and regulations.  State law and state courts are not suited to conducting such an analysis.

30.     If California's nuisance law were to apply here, Plaintiff would need to prove, among other things, that each Defendant's conduct is "unreasonable"—that is, that "the gravity of the harm outweighs the social utility of the defendant's conduct."  *San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 938 (1996).  Plaintiff alleges that each Defendant, by marketing and selling products packaged in plastic and encouraging consumers to recycle those products, has "created, contributed to, and/or assisted in creating conditions which constitute a nuisance by causing plastic pollution in California waterways and coasts."  Compl. ¶ 169.  Plaintiff further alleges that "[t]he social benefit of

13

Gibson, Dunn &
Crutcher LLP

plastic packaging associated with Defendants' Products is outweighed by the availability of alterna-tive products." *Id.* ¶ 172(d).  In other words, Plaintiff attempts to redefine what is a "reasonable" amount of plastics, both in the stream of commerce and in marine environments, and to regulate plas-tics in the marine environment originating and proliferating far beyond the borders of California and even the United States.  But federal law requires federal agencies to carefully "assess both the costs and benefits of [an] intended regulation and, recognizing that some costs and benefits are difficult to quantify, propose or adopt a regulation only upon a reasoned determination that the benefits of the intended regulation justify its costs."  Executive Order 12866, 58 Fed. Reg. 190 (1993).

31.     Under congressional direction, federal agencies have exercised such cost-benefit bal-ancing with respect to Defendants' conduct in ways directly relevant to Plaintiff's claims.  Congress has acted through a variety of federal statutes—primarily, but not exclusively, the Clean Water Act—to strike the balance between industry, consumers' needs, and environmental protection, including the prevention of pollution and the preservation of wildlife.  Under the Clean Water Act, for example, "Congress has not left the formulation of appropriate federal [water quality] standards to the courts through application of often vague and indeterminate nuisance concepts and maxims of equity juris-prudence," *Milwaukee II*, 451 U.S. at 317, but rather has directed the EPA Administrator to develop criteria for a variety of potential water pollutants, including "garbage," 33 U.S.C. § 1362(6).  Numer-ous other federal statutes and initiatives likewise address the balance among economic and environ-mental interests, including in the specific areas of marine debris and marine wildlife preservation. *See, e.g.*, Marine Debris Act, 33 U.S.C. § 1951 (Congressional purpose "to address the adverse im-pacts of marine debris on the United States economy, the marine environment, and navigation safety through the identification, determination of sources, assessment, prevention, reduction, and removal of marine debris"); *id.* § 1954(a) (establishing "an Interagency Marine Debris Coordinating Commit-tee to coordinate a comprehensive program of marine debris research and activities among Federal agencies, in cooperation and coordination with non-governmental organizations, industry, universi-ties, and research institutions, States, Indian tribes, and other nations"); Fish and Wildlife Coordina-tion Act, 16 U.S.C. § 661(b) (Congressional purpose to "recogniz[e] the vital contribution of our

Gibson, Dunn &
Crutcher LLP

wildlife resources to the Nation, the increasing public interest and significance thereof" and "to provide that wildlife conservation shall receive equal consideration and be coordinated with other features of water-resource development programs"); Nat'l Oceanic & Atmospheric Admin. Marine Debris Program, Interagency Marine Debris Coordinating Committee, https://marinedebris.noaa.gov/IMDCC (last updated Mar. 31, 2020).

32.     The question whether each Defendant has complied with these federal directives, and whether the federal agencies charged by Congress have appropriately struck the balance among economic and environmental interests, is "inherently federal in character" and gives rise to federal question jurisdiction. *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 347 (2001); *see also Bd. of Comm'rs of Se. La. Flood Protection Auth.-E. v. Tenn. Gas Pipeline Co*, 850 F.3d 714, 725 (5th Cir. 2017) ("*Flood Protection Authority*") (affirming federal jurisdiction under *Grable* where "the scope and limitations of a complex federal regulatory framework are at stake"); *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (affirming federal question jurisdiction where claims implicated federal agency's acts implementing federal law); *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (federal removal under *Grable* appropriate where claims were "a collateral attack" on the validity of agency action under a highly reticulated regulatory scheme).

33.     Adjudicating these claims in federal court, including whether a private right of action is even cognizable for the harms Plaintiff alleges or whether Plaintiff has standing to bring such claims, is both appropriate and necessary because it would require interpreting and applying a compendium of federal and international laws, and because the relief sought by Plaintiff would affect the regulatory regimes designed by Congress, affecting residents of the United States far outside the state court's jurisdiction. *See*, *e.g.*, *Grable*, 545 U.S. at 312 (claims that turn on substantial federal questions "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007) (removal under *Grable* is appropriate where state common law claims implicate "an

1    intricate federal regulatory scheme . . . requiring some degree of national uniformity in interpreta-

2    tion").[1]

3           34.    Plaintiff's state-law claims also necessarily raise substantial federal questions because

4    Plaintiff alleges that, but for each Defendant's conduct, the federal government would have adopted

5    different laws and policies with respect to the production, consumption, and disposal of plastic con-

6    tainers.  Plaintiff alleges that Defendants have waged a "decades-long campaign to deflect blame for

7    the plastic pollution crisis by convincing the public that recycling and litter prevention are the true

8    solutions to plastic pollution," including the "Keep America Beautiful Campaign" and the "'I Want to

9    Be Recycled' campaign."  Compl. ¶¶ 119–21.  Plaintiff further alleges that "[t]hese public relations

10   strategies have shifted the public focus to consumer recycling behavior and have thwarted legislation

11   that would increase corporate responsibility for waste management."  *Id.* ¶ 122.  While these allega-

12   tions are baseless, to determine each Defendant's causal contribution (if any) to the plastic pollution

13   that Plaintiff challenges, a court will need to evaluate the impact of each Defendant's challenged con-

14   duct on public debate and social policy, and whether Congress and the Executive Branch would have

15   adopted different policies, which requires analyzing federal regulatory decision-making standards in

16   an attempt to determine how federal regulators would have applied those standards under counterfac-

17   tual circumstances.  *Cf. Flood Protection Auth.*, 850 F.3d at 723 (finding necessary and disputed fed-

18   eral issue in plaintiffs' state-law tort claims because they could not "be resolved without a determina-

19   tion whether multiple federal statutes create a duty of care that does not otherwise exist under state

20   law").

21

22   _____

23   [1] Plaintiff's claims also necessarily raise numerous other disputed and substantial federal issues, such
     as (1) whether any Defendant can be held liable consistent with the First Amendment for purportedly

24   "engaging in a campaign of disinformation regarding plastic packaging and recycling and the impacts
     of plastic on oceans and marine life," Compl. ¶ 210(d); (2) whether a state court may hold any De-

25   fendant liable for conduct that was global in scale, which allegedly produced effects that are also
     global in scale, consistent with constitutional principles limiting the jurisdictional and geographic

26   reach of state law; (3) whether producers of products packaged in plastic may, consistent with the
     protections of due process under the U.S. Constitution, be held liable for Plaintiff's alleged injuries

27   when it is the disposal of plastics—including by consumers, municipalities, and foreign entities—that
     leads to plastic being released into marine environments; and (4) whether a state court may regulate

28   and burden the global sale and use of products that have been lawfully manufactured and sold for
     decades, consistent with the Commerce Clause and foreign affairs doctrine, as well as other constitu-
     tional principles.

35.     Moreover, in seeking to curb each Defendant's lawful production, sale, and labeling of their products, Plaintiff is encroaching on the prerogatives of the federal Executive Branch with respect to international negotiation and cooperation regarding ongoing and future multilateral efforts to manage plastic use and recycling, which necessarily depend on mutual concessions by all stakeholders.  Because "[i]t is well established that the federal government holds the exclusive authority to administer foreign affairs," *Ginergy v. City of Glendale*, 831 F.3d 1222, 1228–29 (9th Cir. 2016), "at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the 'concern for uniformity in this country's dealings with foreign nations' that animated the Constitution's allocation of the foreign relations power to the National Government in the first place," *Am. Ins. Assoc. v. Garamendi*, 539 U.S. 396, 413 (2003).

36.     In sum, the causes of action asserted in the Complaint necessarily raise disputed and substantial federal questions that require uniform interpretation and thus belong in a federal forum.

## V.     THE ACTION IS REMOVABLE BECAUSE THIS CASE ARISES FROM ACTS OCCURRING ON MULTIPLE FEDERAL ENCLAVES.

37.     This Court also has original jurisdiction under the federal enclave doctrine.  The Constitution authorizes Congress to "exercise exclusive legislation in all cases whatsoever" over all places purchased with the consent of a state "for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."  U.S. Const. art. I, § 8, cl. 17.  "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"  *Durham*, 445 F.3d at 1250.  The "key factor" in determining whether a federal court has federal enclave jurisdiction "is the location of the plaintiff's injury or where the specific cause of action arose."  *Sparling v. Doyle*, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014); *see also Bd. of Comm'rs of Se. La. Flood Protection Auth.-E. v. Tenn. Gas Pipeline Co*., 29 F. Supp. 3d 808, 831 (E.D. La. 2014) (noting that defendants' "conduct" or "the damage complained of" must occur on a federal enclave).  Federal jurisdiction is available so long as *some* of the events or damages alleged in the complaint occurred on a federal enclave.  *See Durham*, 445 F.3d at 1250; *Bell v. Arvin Meritor, Inc.*, 2012 WL 1110001, at *2 (N.D.

1   Cal. Apr. 2, 2012) (finding federal enclave jurisdiction where "some of the[] locations . . . are federal

2   enclaves").

3        38.    Three requirements exist for land to be a federal enclave:  (1) the United States must

4   have acquired the land from a state; (2) the state legislature must have consented to the jurisdiction of

5   the federal government; and (3) the United States must have accepted jurisdiction.  *Wood v. Am.*

6   *Crescent Elevator Corp.*, 2011 WL 1870218, at *2 (E.D. La. May 16, 2011).

7        39.    The federal government owns federal enclaves in the area where the "damage com-

8   plained of" in Plaintiff's Complaint allegedly occurs.  *Tenn. Gas Pipeline*, 29 F. Supp. 3d at 831.

9   Plaintiff broadly alleges plastic pollution in a variety of locations and seeks abatement of an alleged

10  nuisance without differentiating between state and federal lands.  *See, e.g.*, Compl. ¶ 169 ("Defend-

11  ants by their affirmative acts and omissions have created, contributed to, and/or assisted in creating

12  conditions which constitute a nuisance by causing plastic pollution in California waterways and

13  coasts, and its associated harms described above.").  California alone contains many federal enclaves

14  that encompass or overlap with waterways and coastal areas, such as the Presidio in San Francisco,

15  the Golden Gate National Recreation Area, Point Reyes National Seashore, Naval Air Station North

16  Island, Point Mugu Naval Air Weapons Station, Camp Pendleton, Vandenburg Air Force Base, and

17  numerous other federal facilities and national park areas.  *See, e.g.*, *Totah v. Bies*, 2011 WL 1324471,

18  at *2 (N.D. Cal. Apr. 6, 2011) (denying motion to remand where claim arose in the Presidio in San

19  Francisco, a federal enclave); *Azhocar v. Coastal Marine Servs., Inc.*, 2013 WL 2177784, at *1 (S.D.

20  Cal. May 20, 2013) ("Federal enclaves include 'numerous military bases, federal facilities, and even

21  some national forests and parks.'" (quoting *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234,

22  1235 (10th Cir. 2012))).  Plaintiff's "[f]ailure to indicate the federal enclave status and location of the

23  exposure will not shield [it] from the consequences of this federal enclave status." *Fung v. Abex*

24  *Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992).  Accordingly, federal jurisdiction exists over Plain-

25  tiff's claims.

26

27

28

## VI.   THE ACTION IS REMOVABLE BECAUSE PLAINTIFF ALLEGES HARMS OC-CURRING ON NAVIGABLE WATERS THAT RELATE TO TRADITIONAL MARI-TIME ACTIVITY.

40.     This Court also has original admiralty or maritime jurisdiction over this case because Plaintiff alleges harm occurring on navigable waters allegedly caused by conduct that relates to traditional maritime activity.  *See* 28 U.S.C. § 1333(1); 46 U.S.C. § 30101(a).

41.     Federal courts have admiralty or maritime jurisdiction where the alleged "tort occurred on navigable water or . . . injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534.  In addition, the "type of incident involved" must have "'a potentially disruptive impact on maritime commerce,'" and "the 'general character' of the 'activity giving rise to the incident'" must bear "a 'substantial relationship to traditional maritime activity.'" *Id.* (citations omitted).  Only one claim need arise under admiralty jurisdiction for this Court to exercise jurisdiction over the entire action.  *See Ali v. Rogers*, 780 F.3d 1229, 1236 (9th Cir. 2015).

42.     These requirements are satisfied here.  Plaintiff alleges that Defendants have caused, created, or contributed to a public nuisance in the form of accumulated undifferentiated plastic waste and ambient microplastics in navigable waters, including the Pacific Ocean, that are squarely within the jurisdiction of the federal government.  *See*, *e.g.*, Compl. ¶¶ 11–15 (describing the amount of plastic entering the world's oceans and rivers from sources around the globe); *id.* ¶ 103 (alleging that China has "routinely" dumped plastics that then accumulate in maritime environments).

43.     Plaintiff also claims that marine plastic waste disrupts the use of maritime waters and threatens tourism, recreation, and fishing industries worldwide.  *See*, *e.g.*, Compl. ¶ 90 ("Plastic pollution threatens tourism, recreation, and fishing industries.  Public utilization of the ocean and recreational activities therein are hindered by [] plastic pollution."); *id.* ¶ 92 ("global losses from all industries afflicted by marine pollution [] adds [up] to approximately $13 billion annually"); *id.* ¶ 158 ("plastic pollution impacts waterways, coasts, and oceans everywhere"); *id.* ¶ 172 (the proliferation of marine plastic waste "interfere[s] with the public's right to use and enjoy the ocean," and causes the "loss of use and enjoyment of ocean and marine life").

Gibson, Dunn &
Crutcher LLP

44.     Moreover, the alleged conduct that Plaintiff challenges bears a substantial relationship to traditional maritime activity.  As a critical part of Defendants' supply and distribution chains, many Defendants ship their products overseas by seagoing vessels worldwide.  It is this global commerce—including maritime commerce—that Plaintiff alleges contributed to the accumulation of plastic waste that created the purported nuisance.  Plaintiff also attributes some of this harm to the United States' former practice of shipping plastic waste to China, where it was burned and dumped into landfills and waterways that carried it to the ocean.  *See*, *e.g.*, Compl. ¶¶ 14, 103.  And Plaintiff alleges that Defendants have caused injury to the Pacific Ocean in the form of, for example, a floating interconnected plastic bed that is more than twice as large as the State of Texas.  *See id.* ¶ 154.  The State of California has no jurisdiction to regulate such conduct and alleged harm on the high seas.  Because these activities bear a substantial relationship to traditional maritime activity, federal admiralty or maritime jurisdiction exists over Plaintiff's claims.

## VII.    THE ACTION IS REMOVABLE UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

45.     This action is also removable under the federal officer removal statute, 28 U.S.C. § 1442, because Plaintiff bases liability on activities undertaken at the direction of the federal government.  The federal officer removal statute allows removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  Jurisdiction under the federal officer removal statute is afforded a "generous" interpretation," *Durham*, 445 F.3d at 1252, and the "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1),'" *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  "A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citations omitted).

46.     All three elements are satisfied here.  Each Defendant is a corporation and thus a "person" within the meaning of the federal officer removal statute.  *See Leite*, 749 F.3d at 1122, n.4.

Gibson, Dunn & Crutcher LLP

Some Defendants have federal contracts requiring them to take actions under a federal officer's direction that have a "causal nexus" with Plaintiff's allegations about marine plastic waste.  *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc).  These include, for example, providing non-perishable food and potable water to disaster-affected areas and providing meal kits for the U.S. military.  And Defendants intend to raise numerous colorable federal defenses, including preemption, *see Goncalves ex rel. Goncalves v, Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1249 (9th Cir. 2017), and that Plaintiff's claims are barred by the U.S. Constitution, including the Commerce and Due Process Clauses, as well as the First Amendment and separation of powers.  *See Willingham*, 395 U.S. at 407 (a defendant invoking section 1442(a)(1) "need not win his case before he can have it removed").  For all of these reasons, removal under 28 U.S.C. § 1442 is proper.

## VIII.   THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER.

47.     Based on the allegations from the Complaint set forth above, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1333, and 1442.  Accordingly, removal of this action is proper under 28 U.S.C. §§ 1441, 1442, and 1446.

48.     The United States District Court for the Northern District of California is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Plaintiff originally filed this case, the Superior Court of California for the County of San Mateo.  *See* 28 U.S.C. § 84(a); 28 U.S.C. § 1441(a).  Pursuant to Local Rule 3-2(d), the action should be assigned to either the San Francisco or Oakland divisions of this Court.

49.     All Defendants that have been joined and served (or purported to be served) join in the removal of the action.  28 U.S.C. § 1446(b)(2)(A).  Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served (or purported to be served) on Defendants is attached as Exhibits A–R to the Chapla Declaration.

50.     Upon filing this Notice of Removal, Defendants will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Superior Court of California for the County of San Mateo, pursuant to 28 U.S.C. § 1446(d).

Accordingly, Defendants remove to this Court the above action pending against them in the Superior Court of California for the County of San Mateo.

Gibson, Dunn & Crutcher LLP

1    Respectfully submitted,

2    Dated: April 1, 2020                                GIBSON, DUNN & CRUTCHER LLP

3

4                                                        By:   */s/  Andrew S. Tulumello*

5                                                        Andrew S. Tulumello (SBN 196484)
                                                         Claire L. Chapla (SBN 314255)
6                                                        GIBSON, DUNN & CRUTCHER LLP
                                                         1050 Connecticut Avenue, N.W.
7                                                        Washington, D.C. 20036
                                                         Telephone:  202.955.8500
8                                                        Facsimile:  202.530.9678
                                                         Email:  atulumello@gibsondunn.com
9                                                        Email:  cchapla@gibsondunn.com

10                                                       *Attorneys for Defendant PepsiCo, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: **/s/ René P. Tatro

René P. Tatro (SBN 078383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 South Grand Avenue, Suite 4270
Los Angeles, California 90071
Telephone: (213) 225-7171
Facsimile: (213) 225-7151
E-mail: rttro@ttsmslaw.com
E-mail: jmarkowitz@ttsmslaw.com

*Attorneys for Defendant Crystal
Geyser Water Company*

By: **/s/ Mary Rose Alexander

Mary Rose Alexander (SBN 143899)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
E-mail: mary.rose.alexander@lw.com

Robert M. Howard (SBN 145870)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400
E-mail: robert.howard@lw.com

Margaret A. Tough (SBN 218056)
Shannon D. Lankenau (SBN 294263)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
E-mail: margaret.tough@lw.com
E-mail: shannon.lankenau@lw.com

*Attorneys for Defendant
The Clorox Company*

By: **/s/ Gary T. Lafayette

Steven A. Zalesin (*pro hac vice admission
pending*)
Jane Metcalf (*pro hac vice admission
pending*)
PATTERSON BELKNAP
  WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Email: sazalesin@pbwt.com
Email: jmetcalf@pbwt.com

Gary T. Lafayette (SBN 888666)
LAFAYETTE & KUMAGAI LLP
1300 Clay Street, Suite 810
Oakland, California 94612
Telephone: (415) 357-4600
Email: glafayette@lkclaw.com

*Attorneys for Defendant
The Coca-Cola Company*

By: **/s/ Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr. (SBN 132099)
Perlette M. Jura (SBN 242332)
Bradley J. Hamburger (SBN 266916)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-6904
E-Mail: tboutrous@gibsondunn.com
E-Mail: pjura@gibsondunn.com
E-Mail: bhamburger@gibsondunn.com

*Attorneys for Defendant
Nestlé USA, Inc.*

By: **/s/ Stephen D. Raber

Stephen D. Raber (SBN 121958)
David Horniak (SBN 268441)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail:  sraber@wc.com
E-mail:  dhorniak@wc.com

*Attorneys for Defendant*
*Mars, Incorporated*

By: **/s/ Angela C. Agrusa

Angela C. Agrusa (SBN 131337)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone:  (310) 595-3000
Facsimile:  (310) 595-3300
E-mail:  angela.agrusa@dlapiper.com

George Gigounas (SBN 209334)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone:  (415) 615-6005
Facsimile:  (415) 659-7305
E-mail:  george.gigounas@dlapiper.com

*Attorneys for Danone US, LLC, erroneously*
*sued as Danone North America*

By: **/s/ Mark C. Goodman

Mark C. Goodman (SBN 154692)
Anne Kelts Assayag (298710)
BAKER MCKENZIE LLP
Two Embarcadero Center, Suite 1100
San Francisco, California 94111
Telephone: (415) 576-3080
Facsimile: (415) 374-2499
Email:  mgoodman@bakermckenzie.com
Email:  anne.assayag@bakermckenzie.com

*Attorneys for Defendant*
*Mondelēz Global LLC, erroneously sued as*
*Mondelēz International, Inc.*

By: **/s/ Dawn Sestito

Dawn Sestito (SBN 214011)
Richard Goetz (SBN 115666)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
E-Mail:  dsestito@omm.com
E-Mail:  rgoetz@omm.com

*Attorneys for Defendant*
*Colgate-Palmolive Company*

Gibson, Dunn &
Crutcher LLP

By: **/s/ David C. Kiernan*

David C. Kiernan (SBN 215335)
JONES DAY LLP
555 California Street, 26th floor
San Francisco, California 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email:  dkiernan@jonesday.com

*Attorneys for Defendant*
*The Procter & Gamble Company*

*** Pursuant to Civ. L.R. 5-1(i)(3), the electronic signatory has obtained approval from this signatory*

NOTICE OF REMOVAL
CASE NO. 3:20-CV-2212

Gibson, Dunn &
Crutcher LLP