**COTCHETT, PITRE & MCCARTHY, LLP**
JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
MARK C. MOLUMPHY (SBN 168009)
mmolumphy@cpmlegal.com
NOORJAHAN RAHMAN (SBN 330572)
nrahman@cpmlegal.com
TYSON REDENBARGER (SBN 294424)
tredenbarger@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone(650) 697-6000
Facsimile:(650) 697-0577

*Counsel for Plaintiff Earth Island Institute*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE,<br><br>                                      Plaintiff,<br><br>vs.<br><br>CRYSTAL GEYSER WATER COMPANY; THE CLOROX COMPANY; THE COCA-COLA COMPANY; PEPSICO, INC.; NESTLE USA, INC.; MARS, INCORPORATED; DANONE NORTH AMERICA; MONDELEZ INTERNATIONAL, INC.; COLGATE-PALMOLIVE COMPANY; THE PROCTER & GAMBLE COMPANY; and DOES 1-25, inclusive<br><br>                                      Defendants. | Case No.: 4:20-cv-02212-HSG<br><br>**REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>[Remand to the Superior Court of the State of California, County of San Mateo, Case No. 20CIV01213].<br><br>Date:           July 16, 2020<br>Time:           2:00 p.m.<br>Courtroom:   2, 4th Floor<br>Judge:         Hon. Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................1

II.   LEGAL STANDARD FOR REMOVAL JURISDICTION..................................2

III.  ARGUMENT.......................................................................................................3

   A.   Earth Island Alleges No Claim Arising Under Federal Law. ........................3

      i.    No federal claim appears on the face of Plaintiff's well-pled complaint. .......................3

      ii.   Plaintiff's claims cannot arise under nonexistent federal common law. ........................4

      iii.  Due Process precludes displacement of Plaintiff's state common law claims. ...............8

      iv.   Federal common law does not "completely preempt" Plaintiff's state law claims. ..........9

   B.   There is No Jurisdiction under *Grable* .........................................................9

      i.    No federal issue is "necessarily raised." .......................9

      ii.   No purported federal issue is "substantial." ...............11

      iii.  *Grable* jurisdiction would disrupt the federal-state balance approved by Congress......12

      iv.   Under the well-pled complaint rule, no *Grable* jurisdiction is available here. .............12

   C.   There is No Federal Enclave Jurisdiction over Plaintiff's Claims....................13

   D.   Plaintiff's Complaint Alleges No Claims under Admiralty or Maritime Law. ................14

   E.   Federal Officer Removal Statute Does Not Confer Subject Matter Jurisdiction...............15

IV.   CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akin v. Big Three Indus., Inc.,*
   851 F. Supp. 819 (E.D. Tex. 1994) ............................................................... 13

*ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana,*
   213 F.3d 1108 (9th Cir. 2000) ........................................................ 4, 12, 13

*Atl. Richfield Co. v. Christian,*
   140 S. Ct. 1335, 206 L. Ed. 2d 516 (2020) ................................... 8, 10, 13

*Ballard v. Ameron Int'l Corp.,*
   2016 WL 6216194 (N.D. Cal. Oct. 25, 2016) ......................................... 13

*Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., LLC,*
   29 F. Supp. 3d 808 (E.D. La. 2014) .......................................................... 14

*Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund,*
   636 F.3d 538 (9th Cir. 2011) ..................................................................... 12

*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987) ........................................................................... 3, 4, 15

*City of Milwaukee v. Illinois & Michigan,*
   451 U.S. 304 (1981) ............................................................................*passim*

*City of Oakland v. BP PLC,*
   960 F.3d 570 (9th Cir. 2020) ..............................................................*passim*

*Coleman v. Trans Bay Cable, LLC,*
   2019 WL 3817822 (N.D. Cal. Aug. 14, 2019) ........................................ 13

*In re Consol. U.S. Atmospheric Testing Litig.,*
   820 F.2d 982 (9th Cir. 1987) ....................................................................... 8

*Cty. of San Mateo v. Chevron Corp.,*
   294 F. Supp. 3d 934 (N.D. Cal. 2018), *aff'd in part, appeal dismissed in part,*
   960 F.3d 586 (9th Cir. 2020) ............................................................... 10, 12

*Cty. of San Mateo v. Chevron Corp.,*
   960 F.3d 586 (9th Cir. 2020) ..................................................................... 15

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California,*
   463 U.S. 1 (1983) ......................................................................................... 9

*Gaus v. Miles, Inc.,*
   980 F.2d 564 (9th Cir. 1992) (per curiam)..................................................3

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,*
   545 U.S. 308 (2005)..................................................*passim*

*Gunn v. Minton,*
   568 U.S. 251 (2013)..................................................9, 10

*Hunter v. Philip Morris USA,*
   582 F.3d 1039..................................................3, 15

*Illinois v. City of Milwaukee, Wis.,*
   406 U.S. 91–93 (1972)..................................................4

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
   513 U.S. 527 (1995)..................................................14, 15

*Johnson v. United States Steel Corp.,*
   240 Cal. App. 4th 22 (Cal. Ct. App. 2015)..................................................12

*Luther v. Countrywide Home Loans Servicing LP,*
   533 F.3d 1031 (9th Cir. 2008)..................................................2, 3

*Merrell Dow Pharm. Inc. v. Thomson*
   478 U.S. 805, 809 n.6 (1986)..................................................15

*Michigan v. U.S. Army Corps of Engineers,*
   667 F.3d 765 (7th Cir. 2011)..................................................6, 7

*Robertson v. GMAC Mortg., LLC,*
   640 F. App'x 609 (9th Cir. 2016)..................................................3

*Rodriguez v. Federal Deposit Insurance Corporation,*
   140 S.Ct. 713 (February 25, 2020)..................................................8

*Rosseter v. Indus. Light & Magic,*
   2009 WL 210452 (N.D. Cal. Jan. 27, 2009)..................................................14

*State of New Mexico v. Monsanto et al.,*
   --- F. Supp. 3d ---, No. 19-CV-01139..................................................13, 14

*Stiefel v. Bechtel Corp.,*
   497 F. Supp. 2d 1138 (S.D. Cal. 2007)..................................................14

*Washington v. Glucksberg,*
   521 U.S. 702 (1997)..................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

33 U.S.C. § 1365 ........................................................................................................ 6

33 U.S.C. § 1370 ........................................................................................................ 6

28 U.S.C. §1447 ....................................................................................................... 15

28 U.S.C. §1441(c) .................................................................................................... 3

9 U.S. Code §1 ......................................................................................................... 15

Aquatic Nuisance Prevention and Control Act of 1990 .......................................... 7

Federal Hazardous Substances Act ........................................................................ 12

Federal Water Pollution Control Act ....................................................................... 5

Federal Water Pollution Control Act Amendments ............................................. 5, 8

Securities Act of 1933 ........................................................................................... 2, 3

**Other Authorities**

Rest. 2d Torts ............................................................................................................ 7

I.   **INTRODUCTION**

Defendants have failed to meet their burden.  Despite binding precedent to the contrary, Defendants insist that Plaintiff's claims arise under federal common law, and that this Court has subject matter jurisdiction.  The law and facts before this Court show that that assertion is simply false.  Defendants remaining arguments fail, as they have no support in the record or in the law.

Again, Defendants attempt to mischaracterize Plaintiff's Complaint as requiring a remedy for worldwide plastic pollution and for "interstate marine plastic pollution."  These are, again, misrepresentations of Plaintiff's actual causes of action and the relief sought.  By definition "interstate" means more than one state, and Earth Island only seeks redress for harms occurring in a single state—California.  Compl. ¶17-21 24-26, 28, 33, 37, 40, 44, 48, 52, 56, 60, 64, 68, 85, 91, 105, 116, 144, 145, 149, 153, 154, 160, 169.  Plaintiff's Complaint makes this abundantly clear:

- Plaintiff is "injured by Defendants' conduct and the consequent harms to waterways, coasts, and marine life in California."  Compl. ¶24.[1]

- "Earth Island…has diverted resources to address plastic pollution in California…Absent relief from this Court, plastic pollution and the resulting harms to California waterways, coasts, and marine life will continue…"  Compl. ¶25.

- Defendants "directed substantial business to California…packaged, transported, traded, distributed, marketed promoted, sold, an/or consumed in California."  Compl. ¶33, 37, 40, 44, 48, 52, 56, 60, 64, 68.

- "Plaintiff's injuries described herein arose out of and related to those operations and occurred in California."  Compl. ¶73.

- "Earth Island has been harmed by Defendants' torts in California; the organization has had to allocate larger and larger shares of its budget and resources to plastic pollution mitigation in California, a direct result of Defendants' injurious conduct."  Compl. ¶74.

- "These injuries derive from the increase of plastic pollution in California waterways and coasts."  Compl. ¶153.

---

[1] Unless noted otherwise, all internal citations are omitted, and all emphasis is added.

- "Earth Island is diverting more and more organizational resources to remediating <u>California</u> coasts and waterways impacted by plastic pollution."  Compl. ¶160.

- Defendants "have created, contributed to, and/or assisted in creating conditions which constitute a nuisance by causing plastic pollution <u>in California</u> waterways and coasts." Compl. ¶169.

Earth Island's Complaint describes the  problem of plastic pollution, its sources, and its causes.  Public and private nuisance suits, especially those involving environmental issues or other widespread harms, typically include broad descriptions of the origin of the nuisance to give context. *See e.g., City of Oakland v. BP PLC*, 960 F.3d 570, 576 (9th Cir. 2020) (plaintiffs' complaint describes global greenhouse gas emissions as source of public nuisance in San Francisco county and the city of Oakland).  Description of the issues surrounding public nuisance, even if national or global in nature, does not convert a plaintiff's prayer for state law remedies into a complaint for violations under federal law.  *See id.*, at 581 (denying subject matter jurisdiction for complaint describing "'global warming-induced sea level rise' leading to coastal flooding").

With respect to Earth Island's plastic pollution public nuisance claim, Defendants are responsible for the harm that is present on California lands and waters, and Earth Island Institute seeks contributions from Defendants to remedy that specifically delineated California-specific harm.  Thus, there is no basis whatsoever to conclude that the Court may exercise jurisdiction in this action for purposes of a "federal enclave," or maritime jurisdiction for torts occurring in international waters and navigable waters of the United States.  Plaintiff respectfully requests the Court grant its Motion to Remand and award costs and attorneys' fees for Defendants' use of removal as a delay tactic in this case.

## II.  <u>LEGAL STANDARD FOR REMOVAL JURISDICTION</u>

Defendants' assertion of the law in their Opposition is incorrect in all aspects, starting with the legal standard for remand.  Defendants appear to suggest that the burden lies with Plaintiff "to prove an express exception to removal exists."  Opp. at 3 (citing *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008)).  That assertion is false.  In *Luther* the plaintiffs specifically pled claims under the Securities Act of 1933, and thus they chose to assert claims

1   "arising under the Constitution, laws, or treaties of the United States."  28 U.S. §1441(c); *see* 533

2   F.3d 1031, 1034 (9th Cir. 2008).   The Ninth Circuit permitted the plaintiffs to show that "an express

3   exception to removal" existed in that specific instance.   *Luther*, 533 F.3d at 1034. The plaintiffs

4   succeeded in making that showing; the Securities Act of 1933 provides "such an express exception

5   to removal" in section 77p(c) of the title, which precludes removal.  *Id.*  The Ninth Circuit affirmed

6   the District Court's order of remand.  *Id.*  The *Luther* case necessarily applies <u>only</u> to those cases

7   in which litigants specifically plead claims under federal law and forego the privilege that, as

8   "master of the claim," plaintiffs "avoid federal jurisdiction by exclusive reliance on state law."

9   *Oakland*, 960 F.3d at 578 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).   The

10   Ninth Circuit has repeatedly held that the "strong presumption against removal jurisdiction means

11   that the defendant <u>always has the burden of establishing that removal is proper</u>."  *Hunter v. Philip*

12   *Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009 (quoting *Gaus v. Miles, Inc*., 980 F.2d 564, 566

13   (9th Cir. 1992) (per curiam)); *Robertson v. GMAC Mortg., LLC*, 640 F. App'x 609, 611 (9th Cir.

14   2016).  "[F]ederal jurisdiction <u>must be rejected</u> if there is <u>any doubt</u> as to the right of removal in the

15   first instance."  *Gaus*, 980 F.2d at 566.

16   **III.   <u>ARGUMENT</u>**

17       **A.  <u>Earth Island Alleges No Claim Arising Under Federal Law.</u>**

18         **i.   No federal claim appears on the face of Plaintiff's well-pled complaint.**

19       "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded

20   complaint rule,' which provides that federal jurisdiction exists only when a federal question is

21   presented on the face of the plaintiff's properly plead complaint."  *Caterpillar*, 482 U.S. at 392.  As

22   recently as May 2020, the Ninth Circuit affirmed the decades-old law that "[a]s master of the

23   complaint, a plaintiff <u>may defeat removal by choosing not to plead independent federal claims</u>."

24   *Oakland*, 960 F.3d at 578 (citing *Caterpillar*, 482 U.S. at  392)).  That is, a plaintiff may "avoid

25   federal jurisdiction by exclusive reliance on state law." *Id*.  Earth Island has invoked this very

26   privilege.  All of its causes of action are based on California common law, which have centuries-

27   long jurisprudential development.

28

1    Defendants have failed to meet their burden demonstrate that a federal cause of action was

2    "presented on the face of the plaintiff's properly pleaded complaint."  *See Caterpillar*, 482 U.S. at

3    392.  Even if Plaintiff referenced any federal law or statute (which it does not), that reference would

4    not establish that the federal law creates the cause of action under which Plaintiff sues.  *ARCO*

5    *Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1113

6    (9th Cir. 2000) ("The fact that ARCO's complaint makes repeated references to CERCLA does not

7    mean that CERCLA creates the cause of action under which ARCO sues.")  Not only has Earth

8    Island made no direct or indirect reference to federal statute or common law, Defendants fails to

9    show what federal common law, if any, actually creates Plaintiff's causes of action.  *See* § III.A.ii

10   *infra*.  Defendants fail to satisfy the well-pled complaint rule.

11       **ii.    Plaintiff's claims cannot arise under nonexistent federal common law.**

12       Defendants cannot identify a single federal statute or rule that is "presented on the face of

13   [Earth Island's] properly pleaded complaint," because no such law exists.  *Caterpillar*, 482 U.S. at

14   392; *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 304 (1981) (hereinafter referred to as

15   "*Milwaukee II*").  Plaintiff is hard put to determine how it could plead a federal common law public

16   nuisance claim without knowing the elements of those claims.  Defendants do not cite, and Plaintiff

17   is not aware of, any case describing the elements, standards, defenses, and the class of individuals

18   protected under a federal common law water-pollutant public nuisance claim since *Milwaukee II*.

19       In *Illinois v. City of Milwaukee,* the state of Illinois brought a public nuisance suit against

20   the City of Milwaukee concerning alleged nuisance arising from sewage in Lake Michigan and its

21   tributaries.  *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91–93 (1972) (hereinafter referred to as

22   "*Milwaukee I*").  According to the high court, the public nuisance remedy sought by Illinois was

23   "not within the scope of remedies prescribed by Congress" under the Federal Water Pollution

24   Control Act.  *Milwaukee I*, 406 U.S. at 103.  *Milwaukee I* recognized that there "are no fixed rules

25   that govern" federal common law of public nuisance, but that "these will be equity suits in which

26   the informed judgment of the chancellor will largely govern." *Milwaukee I*, 406 U.S. at 107–08.

27   Thus the Court acknowledge federal common law of public nuisance requires a federal judge to

28   make case-by-case determinations based on the unique facts of the case, and established no rule,

1    decision, or standard establishing what elements formed a water-based public nuisance cause of

2    action.  *See id.*

3         Then, in *Milwaukee II*, Illinois brought another public nuisance suit based on the same issue

4    of sewage in Lake Michigan.  *Milwaukee II*, 451 U.S. at 310.  Five months after the complaint was

5    filed, Congress passed the Federal Water Pollution Control Act Amendments of 1972 ("Clean

6    Water Act" or "1972 Amendments").  *Id.*  The 1972 Amendments established a "new system of

7    regulation under which it is illegal for anyone to discharge pollutants into the Nation's waters except

8    pursuant to a permit."  *Milwaukee II*, 451 U.S. at 310.  After trial, the District Court ordered

9    Defendants to limit flow and to treat the raw sewage.  *Milwaukee II*, 451 U.S. at 311.  The Supreme

10   Court vacated the District Court ruling by concluding "no federal common-law remedy was

11   available to respondents."  *Id.*, at 332.

12        Thus, since *Milwaukee II*, a federal court may no longer order abatement of a water-

13   pollutant public nuisance under federal common law.  *See id.*  Defendants' contention that the 1972

14   Amendments "expressly cabined its holding to 'the claims of respondents' which concerned

15   effluent discharges and limitations governed by that permitting scheme" is plainly incorrect.  Opp.

16   at p. 10.  On the same page of the *Milwaukee II* opinion cited by Defendants, the court states:

> The 'major purpose' of the Amendments was '**to establish a *comprehensive* long-range policy for the elimination of water pollution**.'…It is perhaps the most comprehensive legislation that the Congress of the United States has ever developed in this particular field of the environment. This court was obviously correct when it described the 1972 Amendments as **establishing 'a comprehensive program for controlling and abating water pollution.'** The establishment of such a self-consciously comprehensive program by Congress, which certainly did not exist when *Illinois v. Milwaukee* was decided, strongly suggests that **there is no room for courts to attempt to improve on that program with federal common law**.

23   *Milwaukee II*, 451 U.S. at 318-319 (italics original).  By amending the Federal Water Pollution

24   Control Act, Congress "has occupied the field through the establishment of a comprehensive

25   regulatory program," and "has not left the formulation of appropriate federal standards to the

26   [federal] courts through application of often vague and indeterminate nuisance concepts and

27   maxims of equity jurisprudence."  *Milwaukee II*, 451 U.S. at 305.  Thus, application of any federal

28   common law of water-pollutant public nuisance is impermissible, and all preexisting standards,

1  elements, and definitions of federal common law of water-pollutant public nuisance were abolished

2  by the *Milwaukee II* court's ruling in 1981.  *See id.*

3  By occupying the field, Congress took away from federal courts the power to create federal

4  common law but provided an alternative: state common law.  Under the Clean Water Act, states

5  may regulate and control water pollution beyond the standards and limitations on pollutants

6  established by the Act.  *Milwaukee II*, 451 U.S. at 328 ("States may establish such limitations

7  through state nuisance law."); 33 U.S.C. § 1370 ("nothing in this chapter shall preclude or deny the

8  right of any State....to enforce...any limitation respecting discharge of pollutants...or any

9  requirement respecting control or abatement of pollution...or be construed as impairing in any

10  matter affecting any right or jurisdiction of the States with respect to waters (including boundary

11  waters of) of such States."); 33 U.S.C. § 1365 ("Nothing in this section shall restrict any right which

12  any person (or class of persons) may have under any statute or common law").  Thus, Congress has

13  explicitly delegated power to regulate water pollution to the states.

14  **The *Michigan* case is inapposite:**  Defendants cite to only one instance since *Milwaukee*

15  *II*, in which a federal court even remotely opines on a category described as "nuisance in water."

16  *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 778 (7th Cir. 2011) (hereinafter referred

17  to as "*Michigan.*").  The lawsuit concerned interconnected waterways in which an invasive species

18  of fish was causing havoc on the preexisting ecosystems.  *Michigan*, 667 F.3d at 771.  Several states

19  sought an injunction in federal court that would require certain other states to build structures and

20  implement other methods that would prevent proliferation of the fish from one body of water to the

21  other.  *Michigan*, 667 F.3d at 768-69, 781.  The Seventh Circuit determined that Congress had not

22  spoken on the issue of invasive specifies control to the degree that it had spoken on water pollution,

23  and therefore found analysis under federal common law appropriate: "For better or for worse,

24  congressional efforts to curb the migration of invasive species, and of invasive carp in

25  particular, have yet to reach the level of detail one sees in the air or water pollution schemes."

26  *Michigan*, 667 F.3d at 778–79.  The *Michigan* suit involved a dispute among several states, and

27  like the *Milwaukee* cases, had to be litigated in federal court.  *Michigan*, 667 F.3d at 774; *Milwaukee*

28  *II*, 451 U.S. at 325.  Thus, the Seventh Circuit, like in *Milwaukee I*, could not rely on the nuisance

law of a single state, further necessitating federal common law.  *Milwaukee II*, 451 U.S. at 325 ("[w]e were concerned in that case that Illinois did not have any forum in which to protect its interests unless federal common law were created."); s*ee Michigan*, 667 F.3d at 774.  The Seventh Circuit relied heavily on the definitions provided in treatises, such as the Restatement (Second) of Torts to analyze public nuisance elements in light of an invasive species of fish traveling through the waters of several states.  *Michigan*, 667 F.3d at 771.

Ultimately, the Seventh Circuit declined to grant the injunction (by affirming the District Court's denial), and further underscored its limited authority to provide a remedy under federal common law in light of existing work by federal agencies seeking to prevent invasive specifies proliferation under the Aquatic Nuisance Prevention and Control Act of 1990.  *Michigan*, 667 F.3d at 797-799 ("Efforts of other branches of government might be so complete that the additional action ordered by a court would risk undermining agency efforts to abate nuisance.")  Thus, any analysis of any purported federal common law by the Seventh Circuit is dicta and has no bearing on this action.  The Seventh Circuit decision provides no guidance as to the elements, requirements, and standards of the public nuisance created by pollutants in water that are present here.  Nor could it—such a claim was definitively abolished in *Milwaukee II*.  451 U.S. at 305.  Earth Island's public nuisance claim concerns <u>pollutants</u> in <u>California's waters</u> and lands, not the proliferation of invasive wildlife through multiple states' bodies of water as in *Michigan*.  The Supreme Court's conclusion in *Milwaukee II* prohibiting application of federal common law of public nuisance stemming from <u>pollutants in water</u> is directly applicable in this action.  *Id.*  No federal common law of water-pollutant public nuisance exists under which Plaintiff's public nuisance claims can arise under.

To conclude that Plaintiff's public nuisance cause of action arises under federal common law, this Court would have to *create such laws* and retroactively apply them to Plaintiff's allegations.  No federal court appears to have opined on the issue of water-pollutant public nuisance since it was forbidden in *Milwaukee II*.  This Court would have to rely on an amalgamation of state public nuisance laws restated in treatises such as the Restatement of Torts to establish the elements and standards of water-pollutant public nuisance federal common law.  To do so would be to err.  The Supreme Court has recently admonished federal courts to take great caution before creating

1   federal common law: "<u>federal courts should exercise before taking up an invitation to try their hand</u>

2   <u>at common lawmaking</u>." *Rodriguez v. Federal Deposit Insurance Corporation,* 140 S.Ct. 713, 718

3   (February 25, 2020).  The *Rodriguez* District Court "made the mistake of moving too quickly past

4   important threshold questions at the heart of our separation of powers." *Id.*  The *Rodriguez* opinion

5   "supplies no rule of decision, only a cautionary tale." *Id.*  Moreover, the Supreme Court specifically

6   forbids federal courts to create federal common law concerning public nuisances stemming from

7   pollutants in water.  *Milwaukee II*, 451 U.S. at 305.

8       **iii.   Due Process precludes displacement of Plaintiff's state common law claims.**

9          To exercise federal subject matter jurisdiction under 28 U.S §1331 in this matter, the Court

10  would be required to 1) ignore the comprehensive scheme established by the Clean Water Act

11  delegating to states the right to regulate water pollution using state common law, 2) create federal

12  common law of water-pollutant public nuisance, 3) apply the new common law retroactively to find

13  that Plaintiff's state law claims necessarily arise under federal common law, and 4) deny Plaintiff

14  the ability to pursue its state law remedies in state court.  The practical effect of these four actions

15  is de facto preemption (i.e. "nullification") of Plaintiff's state law claims by federal common law,

16  a violation of Due Process. [2]  Whether federal common law displaces state law is a decision made

17  by Congress, not a federal judge: "The enactment of a federal rule in an area of national concern,

18  and the decision whether to displace state law in doing so, is generally made not by the federal

19  judiciary, purposefully insulated from democratic pressures, but by the people through their elected

20  representatives in Congress."  *Milwaukee II*, 451 U.S. at 312–313.  And, "Congress must comply

21  with due process when abolishing or substantially modifying a common law cause of action."  *In*

22  *re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990 (9th Cir. 1987)

23         Here not only is there no Act by Congress delegating authority to federal courts to create

24  federal common law of water-pollutant public nuisance, there is actually an Act which precludes

25  federal courts from creating and applying it.  *Milwaukee II*, 451 U.S. at 305.  Under this ban, the

26

27    [2] Jurisdiction under *Grable* is not possible without satisfying the well-pled complaint rule, and
    Defendants have failed to do so.  *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350, 206 L. Ed.
28  2d 516 (2020); *see also* §III.B.iv *infra*.

1   creation of water-pollutant public nuisance federal common law would be subject to heightened

2   scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Reno v. Flores* 507 U.S. 292,

3   301-3022 (1993)).  The erasure of Plaintiff's state law claims through de facto federal common law

4   preemption does not constitute narrow tailoring and is a violation of Due Process.

5       **iv.   Federal common law does not "completely preempt" Plaintiff's state law claims.**

6       Defendants do not cite any Congressional authority, and none exists, that federal

7   environmental common law preempts Plaintiff's public nuisance and other state common law

8   claims.  Moreover, the Supreme Court has concluded that states have specific purview to regulate

9   water pollution through state common law.  *Milwaukee II*, 451 U.S. at 327-328.  There is no

10  "complete preemption."

11  **B.  There is No Jurisdiction under *Grable.***

12      Jurisdiction under *Grable* applies to only very limited categories of cases.  *Oakland v*, 960

13  F.3d at 578.  The Ninth Circuit recently articulated the *Grable* test: "As explained in *Grable* and

14  later in *Gunn*, federal jurisdiction over a state-law claim will lie if a federal issue is '(1) necessarily

15  raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without

16  disrupting the federal-state balance approved by Congress.'" *Oakland*, 960 F.3d at 578 (quoting

17  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g

18  & Mfg.*, 545 U.S. 308, 314, (2005)).  "All four requirements must be met for federal jurisdiction to

19  be proper." *Id.*

20      **i.   No federal issue is "necessarily raised."**

21      Defendants have failed to establish a single requirement under the *Grable* test, starting with

22  the very first one—they have identified no federal issue that is "necessarily raised."  Defendants

23  have identified no "substantial question of federal law" on which a "plaintiff's right to relief

24  necessarily depends." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S.

25  California*, 463 U.S. 1, 27–28, (1983).  Defendant's Notice of Removal purported to assert that

26  "reasonableness" element of Plaintiff's nuisance claim is a federal issue, and that "[s]tate law and

27  state courts are not suited to conducting such an analysis."  *See* Notice at p. 13.  In Plaintiff's Motion

28  for Remand it argued that California's courts can, do, and should adjudicate the "reasonableness"

1   of common law torts, including nuisances.  Motion at p. 14-16.  Defendants' Opposition brief offers

2   no new arguments regarding "reasonableness."  Opp. at 15-16.

3          Defendants now also argue that "the applicability of federal common law renders Plaintiff's

4   entire nuisance claim necessarily federal in character."  Opp. at 14 ("federal common law can also

5   be viewed as a federal issue that supports federal jurisdiction under [] *Grable*").  That argument

6   fails—Defendants have the logic backwards.  That a federal law governs a plaintiff's claims is a

7   necessary, not sufficient condition, of establishing jurisdiction under *Grable*.  *Atl. Richfield Co. v.*

8   *Christian*, 140 S. Ct. 1335, 1350 (2020) ("To qualify for this narrow exception [under *Grable* and

9   *Gunn*], a state law claim must "necessarily raise" a federal issue, among other requirements." (citing

10  *Gunn*, 568 U.S. at 258)).  And, as explained in great detail previously, no federal law governs

11  Plaintiff's nuisance claim because there is no federal common law that Plaintiff's claim could

12  plausibly arise under, the Court may not create such a law at this juncture, and to maintain

13  jurisdiction of this action by, in essence, preempting Plaintiff's state law claims would be a violation

14  of Due Process.  §III.A.ii-iii *supra*.

15         Also, Defendants' sweeping assertion that "Plaintiff's "entire nuisance claim" is a

16  "substantial" "federal issue," "actually disputed," and "necessarily raised" means that, according to

17  Defendants, each and every element of Plaintiff's public nuisance claim exclusively belongs

18  federal court.  Defendants offer no support for these arguments, let alone their contention that the

19  "reasonableness" element of a public nuisance claim is a federal issue.  By blithely stating that

20  Plaintiff's entire claim is "necessarily federal in character" Defendants have not actually "pointed

21  to a specific issue of federal law that must necessarily be resolved to adjudicate the state law

22  claims."  *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018), *aff'd in*

23  *part, appeal dismissed in part,* 960 F.3d 586 (9th Cir. 2020) (citing *Grable*, 545 U.S. at 314).

24  Defendants' argument that that "reasonableness" is a federal issue "necessarily raised" falls flat and

25  asserting that Plaintiff's "entire nuisance claim is necessarily federal in character" does not solve

26  the fundamental problems in their argument.

27

28

ii.     No purported federal issue is "substantial."

Even assuming for the sake of argument that "Plaintiff's entire nuisance claim" is a necessarily raised federal issue, Defendant fails to establish that it is "substantial." As the Ninth Circuit explained in *Oakland*:

> This ["substantiality"] inquiry focuses on the importance of a federal issue "to the federal system as a whole." An issue has such importance when [1] it raises substantial questions as to the interpretation or validity of a federal statute, or [2] when it challenges the functioning of a federal agency or program. Moreover, an issue may qualify as substantial when [3] it is a "pure issue of law," that [(i)] directly draws into question "the constitutional validity of an act of Congress," or challenges the actions of a federal agency, and [(ii)] a ruling on the issue is "both dispositive of the case and would be controlling in numerous other cases," By contrast, a federal issue is not substantial if it is "fact-bound and situation-specific," or raises only a hypothetical question unlikely to affect interpretations of federal law in the future. A federal issue is not substantial merely because of its novelty, or because it will further a uniform interpretation of a federal statute.

*Oakland*, 960 F.3d at 579. Defendants fail to satisfy any standard under the "substantial" element of the *Grable* test.

First, no claim in Plaintiff's Complaint questions the interpretation or validity of a federal statute. Nowhere in Plaintiff's complaint is there any mention of a federal law, let alone any prayer to invalidate federal law. Second, Defendants point to no allegation in Plaintiff's Complaint that would interfere with the functioning of a federal agency. Instead, they claim that Plaintiff's nuisance claim is a "substantial" issue of federal law because "an entire industry or industries will be affected." Opp. at 17. The "entire industries affected" standard is not one recognized by the Ninth Circuit as creating a "substantial" federal issue. Defendants cite to a Fifth Circuit opinion to argue the existence of this standard. Opp. at 18. But even if the "entire industry affected" standard was considered, it does not help Defendants. Plaintiff's Complaint will not reshape Defendants' trillion-dollar industry of consumer goods manufacturing and sale, by obtaining damages for Defendants' contribution to a nuisance in California. Plaintiffs in *Oakland v. BP* seek public nuisance damages for global greenhouse gas emissions created by the fossil fuel industry, yet the Ninth Circuit found that *Grable* jurisdiction is not appropriate:

> The question whether the Energy Companies can be held liable for public nuisance based on production and promotion of the use of fossil fuels and be required to spend

billions of dollars on abatement is no doubt an important policy question, but it does not raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331.

*Oakland*, 960 F.3d at 581.[3]   An incidental effect on federal policy does not make something "necessarily federal."   *ARCO*, 213 F.3d at 1115 ("an action does not become a challenge to a CERCLA cleanup simply because the action has an incidental effect on the progress of a CERCLA cleanup.)  Third, Plaintiff's nuisance claim is not a "pure issue of law."  *Oakland*, 960 F.3d at 579 ("evaluation of the Cities' claims that Energy Companies' activities amount to a public nuisance would require factual determinations").

### iii.   *Grable* jurisdiction would disrupt the federal-state balance approved by Congress.

Imposing federal jurisdiction under *Grable* here would clearly disturb the balance between federal and state judicial responsibilities.  Judge Chhabria's conclusions in *San Mateo v. Chevron* are especially pertinent here: "On the defendants' theory, many (if not all) state tort claims that involve the balancing of interests and are brought against federally regulated entities would be removable.  *Grable* does not sweep so broadly."  *San Mateo*, 294 F. Supp. 3d at 938.   Many regulated companies comply with federal and international laws but are still hailed into state court by private litigants for violations of  state common law.  *See e.g., Johnson v. United States Steel Corp.*, 240 Cal. App. 4th 22 (Cal. Ct. App. 2015) (suit in state court for defective design after exposure to toxic chemicals from supplier's products, despite regulation under the Federal Hazardous Substances Act).

### iv.   Under the well-pled complaint rule, no *Grable* jurisdiction is available here.

Defendants' *Grable* arguments also fail because Defendants fail to satisfy the well-pled complaint rule.  A state law claim "present[s] a justiciable federal question only if it satisfies *both* the well-plead complaint rule *and* passes the 'implicates significant federal issues' test."  *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) (quoting *Grable*,

---

[3] Defendants claim that the Ninth Circuit "ignored the second *ARCO* category (i.e., whether the claim was necessarily federal)," in analyzing jurisdiction under *Grable*, Opp. at 13, but the *Oakland* court addressed the "federal character" of Plaintiff's allegations by concluding that although the imposition of abatement "is no doubt an important policy question…it does not raise a substantial question of federal law." *Oakland*, 960 F.3d at 581.

545 U.S. at 314); s*ee also ARCO*, 140 S. Ct. at 1350, n.4 (2020)  According to *ARCO*, jurisdiction under *Grable* is a "narrow exception" that applies only where issues of federal law are raised by the complaint.  *Id.*  Here, like in  *ARCO*, the Plaintiff's state law claims do not raise federal issues.  *Id; § III.A.i-iii. supra.* There is no federal jurisdiction under *Grable.*

### C.  <u>There is No Federal Enclave Jurisdiction over Plaintiff's Claims.</u>

Defendants offer three arguments in support of their contention that enclave jurisdiction exists.  First, Defendants dispute Plaintiff's interpretation of the law.  Second, they state that enclave jurisdiction exists because "the federal government owns federal enclaves in the area where the damage complained of . . . occurred."  Opp. at 24:12-13.  And third, Defendants double down on the argument from their removal papers that there are "many federal enclaves" in California.  *Id.* at 24:22.  None of these are a reason to find jurisdiction here or to deny Plaintiff's motion to remand.

Defendants argue that not all of the events giving rise to a claim need occur on a federal enclave to give rise to jurisdiction.  But Defendants' interpretation of the law ignores the cases Plaintiff cites.  First, Defendants simply ignore *State of New Mexico v. Monsanto et al.*, --- F. Supp. 3d ---, No. 19-CV-01139 WJ-GBW, 2020 WL 1812430 (D.N.M. Apr. 9, 2020).  That court rejected enclave jurisdiction where the alleged federal enclave waterways made up "only a small fraction of the . . . waterbodies at issue" and that "even partial occurrence on a federal enclave is insufficient to invoke federal jurisdiction."  *Id.* 2020 WL 1812430, at *9.  Second, Defendants' interpretation of *Ballard*, *Akin*, and *Coleman* is also misplaced in this context.  Whether those cases require that all of the conduct occur on an enclave, or only that the material events do, no jurisdiction exists here because Earth Island's claims involve only California waters and lands, and none of the conduct alleged in the complaint, or the harm the complaint seeks to remedy, occurred on a federal enclave.  *See Coleman v. Trans Bay Cable, LLC*, No. 19-CV-02825-YGR, 2019 WL 3817822, at *3 (N.D. Cal. Aug. 14, 2019) (locus of claims); *Ballard v. Ameron Int'l Corp.*, No. 16-CV-06074-JSC, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016) (material events); *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 822, 825 & n.4 (E.D. Tex. 1994) (all events occurred on enclave); *see also Monsanto*, 2020 WL 1812430, at *9 & n.8.  Defendants cannot meet any of these standards.

1    Next, Defendants assert there are numerous federal enclaves in California and contend the

2  complaint does not limit the relief sought to California waters.  As discussed above, §§ I, III.A.

3  *supra*, the claims do not arise under federal law, create federal questions, or seek relief for land or

4  water that are not under the jurisdiction of the state of California.  And as articulated in Plaintiff's

5  motion and in *Monsanto*, simply identifying the existence of federal lands is insufficient to show

6  jurisdiction.  *See Monsanto*, 2020 WL 1812430, at *9 & n.8.

7    Defendants' reliance on *Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v.*

8  *Tennessee Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 831 (E.D. La. 2014) is of no help to their

9  argument.  Defendants cite the case for the proposition that jurisdiction would exist if the "damage

10  complained of" occurred on a federal enclave.  Opp. at 24:12-15.  But the holding of the case

11  demonstrates why Defendants' argument should be rejected here.  The court explained that the

12  Defendants had identified only two specific federal enclaves potentially at issue, and that the parties

13  had agreed that the damage did not occur there.  *See Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d at

14  830-31.  "Although Defendants mention that there are 'numerous [ ] federal enclaves in the New

15  Orleans area,' they do not demonstrate how this controversy arises from an incident at any of those

16  alleged enclaves." *Id.* at 831 (fn. omitted).  This is the same argument Defendants make here.  They

17  contend there are numerous federal enclaves in California, but fail to explain or show how the

18  damage complained of arises out of any specific one of those enclaves.

19    The remaining cases relied upon by Defendants fare no better.  In *Rossetter v. Industrial*

20  *Light and Magic*, there was no dispute that "all alleged acts of discrimination took place" in the

21  Presidio.  *Rosseter v. Indus. Light & Magic*, No. C 08-04545 WHA, 2009 WL 210452, at *2 (N.D.

22  Cal. Jan. 27, 2009).  In *Steifel v. Bechtel Corp.*, the court found the claim arose on an enclave where

23  "all the pertinent allegations" occurred on a federal enclave.  *Stiefel v. Bechtel Corp.*, 497 F. Supp.

24  2d 1138, 1148 (S.D. Cal. 2007).

25    Under the law and the facts, there is no jurisdiction under the federal enclave doctrine here.

26  **D.  Plaintiff's Complaint Alleges No Claims under Admiralty or Maritime Law.**

27    Maritime jurisdiction arises when a "tort **occurred on navigable water**…or injury suffered

28  on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge*

1    *& Dock Co.*, 513 U.S. 527, 534, (1995).  Defendants' have failed to satisfy this basic premise of

2    maritime law.  *See* Motion at p. 21-22.  As explained at length several times, Earth Island

3    specifically pled torts occurring in *California* waterways and coasts, not in oceanic waters, not in

4    navigable waters of the United States, not in federal enclaves, not in the waters of several states—

5    only the coasts and waters of *California.*  §I *supra*; Compl. ¶17-21 24-26, 28, 33, 37, 40, 44, 48,

6    52, 56, 60, 64, 68, 85, 91, 105, 116, 144, 145, 149, 153, 154, 160, 169.  Thus, no matter how much

7    Defendants misstate, misrepresent, and misdirect the Court as to Plaintiff's allegations—there

8    simply is no maritime jurisdiction.  *Id.*  Plainly, this action has nothing to do with  maritime

9    commerce as defined under statute because it does not concern "charter parties, bills of lading of

10   water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels,

11   [and] collisions" 9 U.S. Code §1 (defining "Maritime transactions") nor "commerce among the

12   several States or with foreign nations," 9 U.S. Code §1 (defining "commerce"), nor is there any

13   "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534.  There is no

14   maritime jurisdiction.

15       **E.**   **Federal Officer Removal Statute Does Not Confer Subject Matter Jurisdiction.**

16           Defendants have abandoned their federal officer removal argument.  Opp. at p.2, n.1.  If this

17   Court orders remand, Defendants cannot appeal.  *Cty. of San Mateo v. Chevron Corp.*, 960 F.3d

18   586, 594 (9th Cir. 2020).  Plaintiff requests attorney's fees and costs for Defendant's Federal Office

19   Removal argument, and others.

20   **IV.**    **CONCLUSION**

21           Defendants do not satisfy their burden to defeat the "strong presumption against removal

22   jurisdiction." *Hunter*, 582 F.3d at 1042 (quoting *Gaus*, 980 F.2d at 566).  Defendants failed to show

23   that any federal law claim was "presented on the face of the plaintiff's properly pleaded complaint."

24   *Caterpillar*, 482 U.S. at 392.  Plaintiff's Complaint does not support any of Defendants' theories

25   and "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell

26   Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).  For the foregoing reasons, Earth

27   Island Institute respectfully requests the Court to grant Plaintiff's Motion to Remand.  Furthermore,

28   Plaintiff requests the Court to grant any relief it deems appropriate under 28 U.S.C. §1447.

Dated: July 1, 2020                              **COTCHETT, PITRE & MCCARTHY, LLP**


                                                  */s/ Mark C. Molumphy*
                                                  **Mark C. Molumphy**
                                                  *Counsel for Plaintiff Earth Island Institute*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Mark C. Molumphy, hereby certify that on July 1, 2020, I caused the foregoing Plaintiff Earth Island Institute's Motion to Remand to be electronically filed via the Court's CM/ECF system.  Notice of this filing will be served to all counsel of record by operation of the Court's electronic filing system.

Dated: July 1, 2020

*/s/ Mark C. Molumphy*

**Mark C. Molumphy**
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Email: mmolumphy@cpmlegal.com
*Counsel for Plaintiff Earth Island Institute*