UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARTH ISLAND INSTITUTE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CRYSTAL GEYSER WATER COMPANY, et al.,<br><br>　　　　　　Defendants. | Case No. 20-cv-02212-HSG<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 69 |

Pending before the Court is Plaintiff Earth Island Institute's ("Plaintiff" or "EII") motion to remand ("Motion to Remand") this action to San Mateo County Superior Court. Dkt. No. 69. Briefing on the Motion to Remand is complete. Dkt. Nos. 77 ("Opp."); 92 ("Reply"). On July 16, 2020, the Court held a hearing on the Motion to Remand. Dkt. No. 93. For the reasons set forth below, the Court **GRANTS** the motion.

**I.　BACKGROUND**

On February 26, 2020, Plaintiff filed this action against several food, beverage, and consumer goods companies (collectively, "Defendants") in the San Mateo Superior Court seeking compensatory and equitable relief associated with alleged injuries sustained as a result of plastic pollution in California coasts and waterways. *See* Dkt. No. 2-2 ("Compl.") ¶¶ 19-21, 161-226. Plaintiff alleges that the plastic pollution was created by Defendants' products ("Products"), and bases its claims on Defendants' dissemination of those Products in the California marketplace without sufficient warning of known dangers and Defendants' statements to the public regarding those dangers. *Id.* ¶¶ 18, 93-152.

Among other allegations, Plaintiff alleges that by putting the recycling symbol on Defendants' Products, Defendants misinformed consumers about what happens to those Products

once they are deposited in a recycling bin. *Id.* ¶¶ 10-15, 134-152. Further, according to Plaintiff, consumers are not aware that the vast majority of those Products will either be burned or shipped to a developing country and dumped in waterways. *Id.* ¶¶ 11-15, 93-111, 132.

As a result, EII seeks contribution from Defendants for costs associated with the alleged pollution by seeking relief under California laws for public nuisance, strict product liability (failure to warn and design defect), negligence, breach of express warranty, and unlawful practices under the California Consumer Legal Remedies Act ("CLRA"). *Id.* ¶¶ 161-226.

On April 1, 2020, Defendants removed the action to this Court, asserting several bases for federal jurisdiction. Dkt. No. 2.

## II.   LEGAL STANDARD

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to federal court. 28 U.S.C. § 1441(a). District courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For removal to be proper, the federal question must be "presented on the face of the plaintiff's properly pleaded complaint." *See Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *see also Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 840–41 (1989).

There is a "presumption against removal jurisdiction, under which [federal courts] 'strictly construe the removal statute,' and reject federal jurisdiction 'if there is any doubt as to the right of removal in the first instance.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *See Gaus*, 980 F.2d at 566.

## III.  DISCUSSION

Defendants contend that the Court has jurisdiction over Plaintiff's Complaint on four independent grounds: (1) Plaintiff's claims, and in particular the public nuisance claim, necessarily

2

arise under federal common law; (2) Plaintiff's claims, even if properly brought under state law, depend on the resolution of substantial and disputed federal issues; (3) Plaintiff's claims arose in federal enclaves; and (4) Plaintiff alleges tort claims relating to maritime activity and occurring on navigable waters.

### A. Federal Question Jurisdiction

Defendants contend that federal jurisdiction exists because Plaintiff's causes of action necessarily turn on federal common law, such that federal common law *must* govern interstate pollution or public nuisance cases. Defendants insist that the complaint is not well-pleaded, and that if it were, it would raise a federal question mandating the exercise of federal jurisdiction.

On its face, Plaintiff's Complaint pleads only state law claims, and Plaintiff does not seek any relief under federal law, or premise its state law claims on any violations of federal law. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As a general matter, even if both federal and state law provide a remedy, Plaintiff can avoid federal jurisdiction by pleading only state law claims, if it is willing to forgo federal remedies. *See id.* (as master of the claim, plaintiff "may avoid federal jurisdiction by exclusive reliance on state law"). That said, while "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986), it is clear that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003).

Defendants contend that Plaintiff's claims, and in particular its public nuisance claim, arise under federal common law, making jurisdiction proper under the "necessarily federal in character" exception to the well-pleaded complaint rule. *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000); *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002).

Defendants' federal jurisdiction theory relies on two core premises: (1) federal common law must be the actual basis for Plaintiff's claims, notwithstanding the state law nuisance label

3

they carry; and (2) these claims may *only* be pursued as a matter of federal common law, which displaces all state law bases for pursuing the relief Plaintiff seeks. *See* Opp. at 5-9. Because the Court finds that the second premise is incorrect as a matter of law, it need not conclusively decide the correctness of the first. But because both premises rely on the existence of federal common law, the Court begins with a discussion of what federal common law is, and whether it still exists (because Plaintiff claims it does not, Mot. at 7).

### i. Is Federal Common Law the Basis for Plaintiff's Claims?

Federal common law operates where "our federal system does not permit the controversy to be resolved under state law" because it implicates "uniquely federal interests," including where "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–41 (1981). In *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011) ("*AEP*"), the Supreme Court rejected the notion that federal common law has been entirely displaced, and reaffirmed the "'new' federal common law" that developed "[i]n the wake of *Erie*." *Id*. at 420–21. "The 'new' federal common law addresses 'subjects within national legislative power where Congress has so directed' or where the basic scheme of the Constitution so demands." *Id*. at 421 (quoting Friendly, In Praise of *Erie*—And of the New Federal Common Law, 39 N.Y.U. L. Rev. 383, 408 n.119, 421–22 (1964)).

In *Illinois v. City of Milwaukee*, 406 U.S. 91, 99 (1972) ("*Milwaukee I*"), the Supreme Court considered whether the district court had subject matter jurisdiction over a case alleging water pollution in Lake Michigan on the ground that "pollution of interstate or navigable waters creates actions arising under the 'laws' of the United States within the meaning of [28 U.S.C.] § 1331(a)." The Court held that jurisdiction existed, explaining that "[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law." *Id*. at 103. The Court found that the public nuisance remedy sought by Illinois was "not within the scope of remedies prescribed by Congress" under the Federal Water Pollution Control Act, but explained that "the remedies which Congress provides are not necessarily the only federal remedies available." *Id*. The Court acknowledged that the federal common law of public nuisance requires a federal court to make case-by-case determinations based on the unique facts of the case, and established no rule,

4

decision, or standard setting out the elements of a water-based public nuisance cause of action. *See id.* at 107-08. *Milwaukee I* articulated the concern that, without federal common law, "the varying common law of the individual States" could be applied to the regulation of interstate pollution, with disparate results. *Id.* at 107 n.9 (quoting *Texas v. Pankey*, 441 F.2d 236, 241 (10th Cir. 1971)). Accordingly, the Court affirmed that "where there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal common law." *Id.* at 105 n.6.

Nearly a decade later, in *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304 (1981) ("*Milwaukee II*"), the Supreme Court held that Congress displaced elements of federal public nuisance common law by adopting amendments to the Clean Water Act. *Milwaukee II*, 451 U.S. at 314; *see also AEP*, 564 U.S. at 419-420. The Clean Water Act amendments established "a comprehensive program for controlling and abating water pollution." *Milwaukee II*, 451 U.S. at 318–320. The *Milwaukee II* Court concluded that "federal courts lack authority to impose more stringent effluent limitations under federal common law than those imposed by the agency charged by Congress with administering this comprehensive scheme." *Id.* at 320.

*Milwaukee II* did not hold that the Clean Water Act displaced all federal common law concerning ambient and interstate water pollution. Instead, the Supreme Court held that the 1972 amendments to the Clean Water Act had displaced federal common law with respect to water pollution from "point source" discharges expressly covered by the Act's permitting scheme, and cabined its holding to "the claims of respondents," which concerned effluent discharges and limitations governed by that permitting scheme. 451 U.S. at 317–18 ("The overflows do not present a different case. They are point source discharges and, under the Act, are prohibited unless subject to a duly issued permit. As with the discharge of treated sewage, the overflows, through the permit procedure of the Act, are referred to expert administrative agencies for control. All three of the permits issued to petitioners explicitly address the problem of overflows.").

Similarly, in 2011 the Supreme Court reiterated in *AEP* that "federal common law" governs a public nuisance claim involving "'air and water in their ambient or interstate aspects,'" and held that "borrowing the law of a particular state would be inappropriate" given the

5

"demonstrated need for a federal rule of decision" for such claims. 564 U.S. at 421–22 (quoting *Milwaukee I*, 406 U.S. at 103). Ultimately, the Court did not decide whether federal common law provided the plaintiffs there with a remedy, because the Court concluded that Congress, through the Clean Air Act, had displaced any such remedy for claims based on carbon dioxide emissions. *Id*. at 423. Importantly for present purposes, *AEP* did not address a claim of preemption or displacement of state law by federal common law, and the Court expressly left open for consideration on remand whether the federal statute at issue (the Clean Air Act) preempted state law nuisance claims. *Id.* at 429.

Applying *AEP*, the Ninth Circuit in *Native Village of Kivalina v. Exxon Mobil Corp*., 696 F.3d 849 (9th Cir. 2012), considered whether federal common law could support a public nuisance claim brought by an Alaskan village to recover for damages attributable to energy companies' "emissions of large quantities of greenhouse gases"—damages that included erosion caused by "sea levels ris[ing]." *Id*. at 853–54. Given the interstate and transnational character of a claim asserting damage from the global accumulation of carbon dioxide emissions, the Ninth Circuit found that "federal common law can apply to transboundary pollution suits." *Id*. at 855. But again, *Kivalina* ultimately turned on a different question than the one presented in this case, because the court there found that a federal statute (the Clean Air Act) had displaced the federal common law remedy sought by the plaintiffs. *Id*. at 855–57.

These cases lead the Court to a series of conclusions about the state of federal common law implicated by Defendants' removal theory. First, the Court must reject Plaintiff's claim that "federal common law involving pollution of the air and water has been displaced and abolished by federal statutes." Mot. at 7. No case has gone so far. *AEP* and *Kivalina* dealt only with the scope of statutory displacement of federal common law by the Clean Air Act, and the Ninth Circuit in *Kivalina* stressed that "[t]he existence of laws generally applicable to the question is not sufficient" and that "the applicability of displacement is an issue-specific inquiry." 696 F.3d at 856. As discussed above, *Milwaukee II* found only a narrow displacement under the Clean Water Act as to point source discharges, and Plaintiff fails to cite any authority interpreting *Milwaukee II* as broadly as it urges.

6

1    Second, however, cases about whether a federal common law right *exists* (i.e., may a plaintiff bring a federal common law nuisance action if it wishes?) have limited application here, where Plaintiff intentionally seeks to *avoid* invoking federal common law (or any other federal law).  Defendants essentially argue that Plaintiff's claims must be assessed with reference to federal common law, but it is not even clear to the Court what the standards for such a claim would be.  So while the best answer the Court can muster to the question of whether Plaintiff could have brought a federal common law claim here if it wanted to do so is "perhaps," that is not really the right question given the posture of this case.  *See City of Oakland v. BP PLC*, 960 F.3d 570, 580 (9th Cir. 2020) (holding that "[e]ven assuming that [Plaintiff] Cities' allegations could give rise to a cognizable claim for public nuisance under federal common law . . ., the district court did not have jurisdiction under § 1331 because the state-law claim for public nuisance fails to raise a substantial federal question").  Instead, the key question is whether federal common law, even assuming it still exists, completely displaces Plaintiff's state law claims.  The Court turns to that question next.

        **ii.    Even Assuming It Has Not Been Displaced by Statute, Does Federal Common Law Itself Displace (i.e., Completely Preempt) Plaintiff's Asserted State Law Bases for Its Claims?**

Even if it were to ignore the well-pleaded complaint rule and find that Plaintiff's state law claims implicate federal common law, the Court concludes that removal is proper only upon a showing of "complete preemption" of the state issues raised.[1]  Defendants contend that if federal common law could be applied to Plaintiff's claims, that fact alone confers jurisdiction sufficient to support removal to federal court.  According to Defendants, where federal common law could

---

[1] The Supreme Court has explained that ordinary preemption, as a federal defense, does not provide a basis for removal "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.  "Complete preemption" is different.  Unlike ordinary preemption, complete preemption "is so 'extraordinary' that it 'converts an ordinary state law common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id*.  The Supreme Court has found complete preemption based on certain statutory causes of action where "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).  Substantial ordinary preemption issues may end up being implicated in this case, but those can be addressed by the state courts on remand.

7

apply to an issue of sufficient importance—here, marine and water pollution—that common law necessarily makes Plaintiff's causes of action federal in character, supporting removal. The Court disagrees.

First, as two courts analyzing Defendants' argument have explained recently, "nothing in the artful-pleading doctrine . . . sanctions this particular transformation," *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 148 (D.R.I. 2019). In *Rhode Island*, that state brought an action in state court against a number of companies involved in the extraction, advertisement, and sale of fossil fuels. *Id.* at 146. The plaintiff alleged various state law tort claims, including public nuisance, arising from the damage those companies allegedly inflicted and would inflict upon non-federal property and natural resources in the state. *Id.* Following removal, the district court granted plaintiff's motion to remand. In doing so, the district court recognized that "transborder air and water disputes are one of the limited areas where federal common law survived," while noting that "[a]t least some of it . . . has been displaced by the Clean Air Act ('CAA')." *Id.* at 149. But remand was nonetheless required because neither federal common law nor the Clean Air Act completely preempted plaintiff's state law claims:

> [W]hether displaced or not, environmental federal common law does not—absent congressional say-so—completely preempt the State's public nuisance claim, and therefore provides no basis for removal. . . . With respect to the CAA, [a]s far as the Court can tell, the CAA authorizes nothing like the State's claims, much less to the exclusion of those sounding in state law. In fact, the CAA itself says that controlling air pollution "is the primary responsibility of States and local governments."

*Id.* at 149-150 (citing 42 U.S.C. § 7401(a)(3) and *AEP*, 564 U.S. at 428). The district court cited the Second Circuit's holding in *Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2nd Cir. 1998), that "it would be disingenuous to maintain that, while [a federal statute] does not preempt state law claims directly, it manages to do so indirectly under the guise of federal common law." *Id.* at 149.

Similarly, in *State of New Mexico v. Monsanto*, 454 F.Supp.3d 1132 (D.N.M. 2020), New Mexico brought suit in state court against companies involved in the manufacture, marketing, and distribution of polychlorinated biphenyls ("PCBs"). Plaintiff alleged that Defendants contaminated New Mexico's natural resources with toxic PCBs, and asserted claims solely under

8

state law, including public nuisance. After removal, plaintiff filed a motion to remand, which the district court granted. The district court rejected defendants' argument that "federal common law governs all claims for transboundary pollution," *id.* at 1147, and assessed instead whether such common law completely preempted plaintiff's claims. Noting that under longstanding Supreme Court precedent "[c]omplete preemption occurs only when Congress intended for federal law to provide the 'exclusive cause of action' for the claim asserted," *id.* at 1149, the district court found that defendants "present[ed] no legal authority to show that Congress has manifested an intent for federal common law to *completely* preempt the area of environmental pollution or public nuisance." *Id.* at 1150 (emphasis in original). The district court pointed out that the defendants' cited cases were initially filed in federal court and thus did not address the removability question, given that "removal jurisdiction is 'a somewhat different animal than original federal question jurisdiction.'" *Id.* Accordingly, the district court found no support for the proposition that "federal common law confers federal removal jurisdiction," *id.* at 1151, and ordered the case remanded.

The Court agrees with the reasoning of these cases, and thus rejects Defendants' theory of complete preemption by federal common law. Fundamentally, the Court cannot reconcile well-established precedent establishing that even statutory complete preemption is a "special and small" category that the Supreme Court has found limited to a total universe of three federal laws in American history with Defendants' claim that the Court *must* find complete preemption here based on the much more malleable concept of federal common law. *See City of Oakland*, 960 F.3d at 579-580 (listing the three statutes identified by the Supreme Court as meeting the complete preemption criteria). This is especially true because, as Defendants acknowledge, even the Clean Water Act does not completely preempt the type of state law claims brought by Plaintiff here. *See County of San Mateo v. Chevron Corp.*, 294 F.Supp.3d 934, 938 (N.D. Cal. 2018) (noting that the Clean Air Act and Clean Water Act "contain savings clauses that preserve state causes of action and suggest that Congress did not intend the federal causes of action under those statutes 'to be exclusive.'"); *see also* Dkt. No. 99 (hearing transcript) at 20 (agreement by defense counsel that "the Clean Water Act does not completely preempt the claims at issue here"). The Ninth Circuit

has recently confirmed in *City of Oakland* that it is not enough for the state law claim to "implicate[] a variety of 'federal interests,'" including energy policy, national security, and foreign policy." 960 F.3d at 580-581. Instead, in that case, as here, "evaluation of the [plaintiff] Cities' claim that the [defendant] Energy Companies' activities amount to a public nuisance would require factual determinations, and a state-law claim that is 'fact-bound and situation-specific' is not the type of claim for which federal jurisdiction lies," requiring remand. *Id.* For all of these reasons, the Court accordingly finds Defendants' creative argument to be inconsistent with the well-pleaded complaint rule and longstanding controlling authority.

In support of their argument for removability based on federal common law, Defendants rely—almost exclusively—on *New SD, Inc. v. Rockwell Intern. Corp.*, 79 F.3d 953 (9th Cir. 1996). *New SD* involved a breach of contract dispute related to the design, fabrication, and delivery of components for a space-based ballistic missile system. *Id.* at 954. The plaintiff filed the case in state court; the defendants removed; the district court denied a remand motion; and the plaintiff took an interlocutory appeal. *Id.*

Notably, the *New SD* court found that the plaintiff made "a number of forceful arguments" in favor of remand, but found itself bound by the court's earlier decision in *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640 (9th Cir. 1961). *See* 79 F.3d at 954. The *New SD* court characterized *American Pipe* as standing for the principle that "the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law"—namely "federal common law." *Id.* at 955. It followed that *American Pipe* could not have been decided as it was "unless on government contract matters having to do with national security, state law is totally displaced by federal common law." *Id.* ("Where the federal interest requires that 'the rule must be uniform throughout the country,' as we said was the case in *American Pipe*, … then the 'entire body of state law applicable to the area conflicts and is replaced by federal rules.'") (internal citations omitted).

The Court finds that *New SD* cannot reasonably be stretched to support Defendants' removability argument here. First, the national security contracting context in that case, including the direct reliance on *American Pipe*, simply bears no resemblance to the facts presented in this

10

case, and it does not appear that *New SD* has been discussed in any of the myriad removal battles in cases involving state law nuisance claims based on pollution.  *See L'Garde, Inc. v. Raytheon Space and Airborne Systems*, 805 F.Supp.2d 932, 942 (C.D. Cal. 2011) ("Since the dispute in *New SD* involved a prime contractor and a subcontractor on a government contract clearly implicating national security interests, the court found federal common law must replace state law in order to provide a uniform federal standard which would prevent the cost of national security from being 'increased in the process.'  However, the Court finds that this case relied upon by Defendant concerns matters of national security that are simply not present here.") (internal citations omitted)*; see also* Dkt. No. 99 (hearing transcript) at 12 (acknowledgment by defense counsel that *New SD* has not "been cited in any of these environmental cases of the sort that have been raised around the country, including in this circuit, for the premise that [Defendants are] stating").  The Court cannot draw a principle as broad as Defendants assert from a case so plainly bound to its context.

      Second, it is not clear to the Court whether the premise underlying *New SD* survived the Supreme Court's later decisions in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), and *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).  The reasoning of *New SD* was built on the premise that private disputes relating to government contracts should be uniformly adjudicated in federal court when "the cost of national security stands to be increased in the process."  79 F.3d at 955 (citing *American Pipe*, 292 F.2d at 644).  But in *Grable*, the Supreme Court explained that "the presence of a disputed federal issue and the ostensible importance of a federal forum are *never necessarily dispositive*; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."  545 U.S. at 314 (emphasis added); *see also Raytheon Co. v. Alliant Techsystems, Inc.*, 2014 WL 29106, at *4 (D. Az. Jan. 3, 2014) ("The Court recognizes that *American Pipe* and *New SD* were decided before the Supreme Court's decisions in *Grable* and *Empire,* which clarified the proper scope of the substantial federal question doctrine."); *id.* at *5 ("The Supreme Court's clarification leads to a conclusion that the premise of *American Pipe* and *New SD* that private disputes relating to a government contract should be uniformly adjudicated in federal court when 'the cost of national

11

security stands to be increased in the process'… is no longer sound."). This Court need not go so far as to conclude that these Supreme Court cases are "clearly irreconcilable" with *New SD*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (explaining that when Ninth Circuit and subsequent Supreme Court precedent conflict, "district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). But at a minimum, they weigh in favor of significant skepticism that a long-ago ruling made in a very fact-specific national security context actually stated a broad rule of *de facto* complete preemption by federal common law, as Defendants urge.

Defendants also rely on dicta in a footnote in *Milwaukee II*, in which the Supreme Court noted what it characterized as "an inconsistency" in the argument made by one of the plaintiff states "that both federal and state nuisance law apply to this case." 451 U.S. at 314 n.7. The Supreme Court said that "[i]f state law can be applied, there is no need for federal common law; if federal common law exists, it is because state law cannot be used." *Id.* Importantly, as noted above, *Milwaukee II* involved a dispute between sovereign governmental entities in different states (the states of Illinois and Michigan on one side and the city of Milwaukee and other municipal entities in Wisconsin on the other). The question there was whether a state could avail itself of federal common law in federal court to bring a claim against out-of-state government bodies, and the Court found that it could not because of statutory complete preemption as to the relevant issue. This Court will confess that it is unsure what should be taken from a footnote discussing an "inconsistency" that did not impact the ground on which the case was actually decided. But in any event, because *Milwaukee II* was filed in federal court in the first instance, the Supreme Court did not have to consider the preemption issues raised in the removal context here, and so this Court does not find the footnote controlling as to those issues. *See New Mexico*, 454 F.Supp.3d at 1150 (pointing out that "because the plaintiffs in both *Milwaukee I* and *Milwaukee II* filed suit in federal court, the Supreme Court did not address preemption issues—either ordinary or complete— because the cases were not removed").

For similar reasons, the Court finds Defendants' reliance on *Wayne* unpersuasive. That case primarily involved the question of whether the Airline Deregulation Act of 1978 completely

preempted state law unfair competition and consumer claims. 294 F.3d at 1182-84. Unsurprisingly, given the very narrow scope of that doctrine as discussed above, the court found that it did not. *Id.* The court then cited *Milwaukee I* for the proposition that "[f]ederal jurisdiction would exist in this case if the claims arise under federal common law," and said that such law could arise from "enclaves of federal judge-made law which bind the states." *Id.* at 1184. The court found the "release valuation doctrine" to be such an enclave, but found the doctrine to be inapplicable to the facts there. *Id.* Again, the Court cannot find support for Defendants' very broad theory of common law preemption in the relatively brief analysis, from a completely different context, in *Wayne*.

Defendants provide no legal authority suggesting that Congress has manifested an intent that federal common law completely preempt the area of marine environmental pollution or public nuisance. *See Beneficial Nat. Bank*, 539 U.S. at 9 n.5 (explaining that for purposes of complete preemption "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive."). Most notably, the Clean Water Act contains savings clauses that preserve state causes of action and suggest that Congress did not intend the federal causes of action under the Clean Water Act "to be exclusive." 42 U.S.C. §§ 7604(e), 7416; 33 U.S.C. §§ 1365(e), 1370. Even assuming that Plaintiff's causes of action implicate one of the limited areas where federal common law survives (and applies), environmental federal common law does not—absent clear congressional direction—completely preempt Plaintiff's public-nuisance and other causes of action. *See Milwaukee II*, 451 U.S. at 328 (noting the lack of complete statutory preemption in the context of the Clean Water Act and leaving open the possibility that "States may establish such [water pollution] limitations through state nuisance law.").

In sum, Defendants' invocation of federal common law does not—absent manifestation of congressional intent—completely preempt Plaintiff's public-nuisance claim. The Court must reject Defendants' request for displacement of the well-pleaded state law claims in Plaintiff's complaint by federal common law, and removal is not proper on this basis.

### B. Federal Jurisdiction under *Grable*

Alternatively, Defendants contend that the Court also has jurisdiction under 28 U.S.C. §

1331 because Plaintiff asserts state law claims that require the resolution of significant federal issues. *Grable*, 545 U.S. at 312. The Court again disagrees.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14). Federal jurisdiction under *Grable* exists only for a "special and small category" of cases. *See Empire Healthchoice*, 547 U.S. at 701 ("In sum, *Grable* emphasized it takes more than a federal element 'to open the 'arising under' door. This case cannot be squeezed into the slim category *Grable* exemplifies.") (internal citations omitted).

As the Ninth Circuit recently explained in *City of Oakland*, only a few cases have fallen into this "slim category," including: "(1) a series of quiet-title actions from the early 1900s that involved disputes as to the interpretation and application of federal law; (2) a shareholder action seeking to enjoin a Missouri corporation from investing in federal bonds on the ground that the federal act pursuant to which the bonds were issued was unconstitutional; and (3) a state quiet title action claiming that property had been unlawfully seized by the IRS because the notice of the seizure did not comply with the Internal Revenue Code." 969 F.3d at 904 (citations omitted). "In other cases where parties have sought to invoke federal jurisdiction over state-law claims, the Court has concluded that jurisdiction was lacking, even when the claims were premised on violations of federal law; required remedies 'contemplated by a federal statute'; or required the interpretation and application of a federal statute in a hypothetical case underlying a legal malpractice claim." *Id.* (citations omitted).

In *City of Oakland*, the Ninth Circuit evaluated whether removal was proper by analyzing whether the claims raised a substantial disputed federal issue under *Grable*. The Ninth Circuit held that no "substantial" federal issue was raised, in significant part because the Ninth Circuit had previously "held that federal public nuisance claims" targeting global warming "are displaced by the Clean Air Act," so it was "not clear that the [complaint] require[d] an interpretation or application of federal law at all." *Id.* at 581. Instead, the court turned to whether the other federal issues allegedly presented in that case were substantial. *Id.* The court concluded they were not,

14

because the cities' claims did not require "an interpretation of a federal statute," and there was no other "legal issue necessarily raised by the claim that, if decided, will 'be controlling in numerous other cases.'" *Id*.

Plaintiff contends that Defendants have not identified a "substantial question of federal law" on which its "right to relief necessarily depends." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27 (1983). Defendants counter that "the applicability of federal common law renders Plaintiff's entire nuisance claim necessarily federal in character." Opp. at 14 ("federal common law can also be viewed as a federal issue that supports federal jurisdiction under [] *Grable*"). Defendants argue that transborder issues are necessarily implicated by Plaintiff's claims because plastic use and promotion of recycling must be governed by a uniform federal rule rather than left to state court systems to resolve. Defendants also point to the Pollution Prevention Act in which "Congress…declare[d] it to be the national policy of the United States that pollution should be prevented or reduced at the source whenever feasible; [and that] pollution that cannot be prevented should be recycled in an environmentally safe manner whenever feasible." 42 U.S.C. § 13101(b). And, according to Defendants, the Complaint seeks to hold Defendants liable for "shift[ing] public focus to consumer recycling behavior," Compl. ¶ 122, and "labeling and advertising . . . plastic packaging as recyclable," *id*. ¶ 126.

However, Defendants point to no allegation in Plaintiff's Complaint whose resolution would interfere with the functioning of any federal agency or policy. Instead, they claim that Plaintiff's nuisance claim implicates a "substantial" issue of federal law because "an entire industry or industries will be affected." Opp. at 17. But the "entire industries affected" standard is not one recognized by the Ninth Circuit as creating a "substantial" federal issue. An incidental effect on federal policy does not make a legal challenge "necessarily federal." *See ARCO*, 213 F.3d at 1115 ("an action does not become a challenge to a CERCLA cleanup simply because the action has an incidental effect on the progress of a CERCLA cleanup.").

While the issue of plastic pollution is no doubt important, similar issues have been found insufficient to trigger *Grable* jurisdiction. *See, e.g.*, *City of Oakland*, 960 F.3d at 581 ("The

question whether the Energy Companies can be held liable for public nuisance based on production and promotion of the use of fossil fuels and be required to spend billions of dollars on abatement is no doubt an important policy question, but it does not raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331."). The Court finds that Plaintiff's state law claims do not raise a substantial federal issue, as the claims do not fit within the "slim category *Grable* exemplifies." *See Empire Healthchoice*, 547 U.S. at 701. Therefore, the Court need not consider the rest of the *Grable* factors.

### C. Federal Enclave Jurisdiction

Defendants next contend that the present action is subject to federal enclave jurisdiction because certain bodies of water described in the Complaint are allegedly on, adjacent to, or near certain federal enclaves. This argument fails.

The "federal enclave doctrine permits federal courts to exercise jurisdiction over. . .claims that arise in federal enclaves." *Coleman v. Trans Bay Cable, LLC*, No. 19-CV-02825-YGR, 2019 WL 3817822, at *3 (N.D. Cal. Aug. 14, 2019). To support removal, Defendants "bear the burden of establishing that the material events alleged in the complaint and giving rise to [Plaintiff's] claims occurred in" an enclave. *Id*. "In federal enclave cases, federal question jurisdiction applies when the locus in which the claim arose is within a federal enclave." *Ballard v. Ameron Int'l Corp.*, No. 16-CV-06074-JSC, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016).

Federal enclave jurisdiction exists only where the claim arises on the federal enclave—not just near it *See State v. Monsanto Co.*, 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017), *aff'd*, 738 F. App'x 554 (9th Cir. 2018) (where plaintiff did not seek relief for contamination of federal territories and would have no standing to do so, court was "satisfied" that none of plaintiff's claims arose on federal enclaves);[2] *see also Willis v. Craig*, 555 F.2d 724, 725 (9th Cir. 1977) (district court did not have jurisdiction where accident did not occur on federal enclave). Water is not part of a federal enclave merely because it is adjacent to or near the enclave or flows into or out of it. *See, e.g.*, *People of the State of California v. U.S.*, 235 F.2d 647, 656 (9th Cir. 1956) (the

---

[2] As an unpublished Ninth Circuit decision, *Monsanto* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

16

federal government, "as regards all claimants to water outside the enclave, is not in the position of sovereign.").

Under the public trust doctrine, the contours of which remain a matter of state law, the state of California "acquired title as trustee" to certain waters and lands adjacent to them on behalf of the people in the state "upon admission to the union." *Nat'l Audubon Soc'y v. Superior Court*, 33 Cal. 3d 419, 433-434 (Cal. 1983); *see PPL Montana, LLC v. Montana*, 565 U.S. 576, 604-605 (2012) (explaining that "the public trust doctrine remains a matter of state law" and that "the States retain residual power to determine the scope of the public trust over waters within their borders."). Congress has also demarcated certain coastal lands as belonging to the coastal states. *Sec'y of the Interior v. California*, 464 U.S. 312, 315–16 (1984) ("By virtue of the Submerged Lands Act, passed in 1953, the coastal zone belongs to the states, while the [outer continental shelf] belongs to the federal government."); *see* 43 U.S.C. §§ 1302, 1311.

Defendants argue that California contains many federal enclaves that encompass or overlap with waterways and coastal areas, such as the Presidio in San Francisco, the Golden Gate National Recreation Area, Point Reyes National Seashore, Naval Air Station North Island, Point Mugu Naval Air Weapons Station, Camp Pendleton, Vandenburg Air Force Base, and numerous other federal facilities and national park areas. Opp. at 24 (citing *Totah v. Bies*, No. C 10-05956 CW, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011) (denying motion to remand where claim arose in the Presidio in San Francisco, a federal enclave); *Azhocar v. Coastal Marine Servs., Inc*., 2013 WL 2177784, at *1 (S.D. Cal. May 20, 2013) ("[Federal] enclaves include 'numerous military bases, federal facilities, and even some national forests and parks.'" (citation omitted)).

However, federal enclave jurisdiction is inappropriate where the federal land is not the "locus in which the claim arose." *See In re High–Tech Employee Antitrust Litigation*, 856 F.Supp.2d 1103, 1125 (N.D. Cal. 2012) (quoting *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975)). Neither Defendants' notice of removal nor Plaintiff's Complaint identifies any purported federal enclave where the alleged harm arose. Instead, Defendants simply highlight a number of federal enclaves in California that could potentially be at issue. But Defendants do not identify which (if any) of these enclaves were allegedly harmed, nor do they identify any federal enclave

17

as the locus of the events in question. In similar circumstances, enclave jurisdiction has been rejected. *See New Mexico*, 454 F.Supp.3d at 1146 (where complaint alleged "that the only natural resources that are the subject of this suit all rest within the State of New Mexico," the court found insufficient basis to conclude, without supporting facts or evidence, that the suit was subject to federal enclave jurisdiction just because certain bodies of water were allegedly on or adjacent to federal enclaves).

The Court finds that Defendants have not satisfied their burden to establish federal enclave jurisdiction because none of the conduct alleged in the Complaint, or the harm the Complaint seeks to remedy, has its locus on a federal enclave. *See Coleman*, 2019 WL 3817822, at *3 (locus of claims); *Ballard*, 2016 WL 6216194, at *3 (material events).

### D. Admiralty and Maritime Jurisdiction

Lastly, Defendants argue that Plaintiff alleges harm on navigable waters relating to maritime activity, so as to create admiralty or maritime jurisdiction under 28 U.S.C. § 1333. Admiralty or maritime jurisdiction arises when a "tort occurred on navigable water…or injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Following the Extension of Admiralty Jurisdiction Act of 1948, 46 U.S.C. § 30101(a), admiralty jurisdiction turns on three factors: (1) "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water"; (2) "whether the incident has 'a potentially disruptive impact on maritime commerce'"; and (3) "whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id*.

It is the "clear law" of the Ninth Circuit "that the situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs." *Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005). "For the purpose of determining admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action." *Id*. at 1085 (quoting 2 Am. Jur. 2d Admiralty § 75).

Defendants contend that the Court has admiralty or maritime jurisdiction because the

"situs" of Plaintiff's claims is navigable waters. Opp. at 23. According to Defendants, this is because Plaintiff alleges injuries relating to the accumulation of plastic waste in the world's oceans and coastal areas and waterways, including the Pacific Ocean. *Id.* (citing to Compl. ¶¶ 1–3, 5, 14, 27, 79–87, 90, 103, 118, 169, 172, 188–94, 200–02).

However, even if these injuries arguably may have occurred at some point on navigable waters, Plaintiff has only pled torts occurring in California waterways and coasts, rather than oceanic waters, navigable waters of the United States, federal enclaves, or the waters of multiple states. *See, e.g.*, Compl. ¶¶ 17-21 24-26, 28, 33, 37, 40, 44, 48, 52, 56, 60, 64, 68, 85, 91, 105, 116, 144, 145, 149, 153, 154, 160, 169. To the extent Defendants refer to sections of the Complaint that highlight global pollution, the Court finds that such references are not elements of Plaintiff's causes of action, and do not make this a maritime or admiralty case.

For example, Plaintiff alleges that it is "injured by Defendants' conduct and the consequent harms to waterways, coasts, and marine life in California," Compl. ¶ 24; "Earth Island…has diverted resources to address plastic pollution in California…Absent relief from this Court, plastic pollution and the resulting harms to California waterways, coasts, and marine life will continue…," *id*. ¶ 25; Defendants "directed substantial business to California…packaged, transported, traded, distributed, marketed promoted, sold, an/or consumed in California," *id.* ¶¶ 33, 37, 40, 44, 48, 52, 56, 60, 64, 68; "Plaintiff's injuries described herein arose out of and related to those operations and occurred in California," *id*. ¶ 73; "Earth Island has been harmed by Defendants' torts in California; the organization has had to allocate larger and larger shares of its budget and resources to plastic pollution mitigation in California, a direct result of Defendants' injurious conduct," *id*. ¶ 74; "These injuries derive from the increase of plastic pollution in California waterways and coasts," *id*. ¶ 153; "Earth Island is diverting more and more organizational resources to remediating California coasts and waterways impacted by plastic pollution," *id*. ¶ 160; and Defendants "have created, contributed to, and/or assisted in creating conditions which constitute a nuisance by causing plastic pollution in California waterways and coasts." *Id*. ¶ 169.

Permitting Defendants to manufacture federal jurisdiction here using doctrines such as

19

maritime law would abrogate the principle that a plaintiff is "master of the claim." *Caterpillar*, 482 U.S. at 392. Accordingly, the Court finds that Defendants have not met their burden of establishing admiralty or maritime jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand the case to San Mateo County Superior Court. The Clerk is **DIRECTED** to remand the case to state court and close the file.

**IT IS SO ORDERED.**

Dated: 2/23/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge